[No. 52573-1. En Banc. January 21, 1988.]

KAREN M. O'DAY, ET AL, *Respondents*, v. KING COUNTY, ET AL, *Petitioners.*

798

*Norm Maleng, Prosecuting Attorney,* and *Kevin M. Raymond, Deputy,* for petitioners.

*Jack R. Burns* and *Burns & Hammerly, P.S.,* for respondents.

UTTER, J.—King County appeals a superior court order invalidating portions of county ordinance 7216, which regulates the presentation of nude and semi–nude entertainment in public places of amusement. The superior court dismissed criminal complaints brought against respondents for allegedly violating the "standards of conduct" established by section 8 of the ordinance, and now codified at King County Code (KCC) 6.08.050(A)(5)(a), (b), and (c).[1] The court invalidated the standards as unconstitutionally

---

[1] For purposes of clarity and consistency with the parties' briefs, we will refer to the various sections of the ordinance using King County Code citations.

overbroad under the state and federal free speech guaranties and invalidated other portions of KCC 6.08.050 for denying respondents equal protection of the law. We reverse.

## BACKGROUND

In 1976, King County enacted ordinance 2625, codified at chapter 6.08 of the King County Code. The 1976 ordinance regulated adult entertainment establishments, but explicitly excluded taverns and other establishments maintaining a liquor license. The ordinance included "standards of conduct" governing the presentation of nude and semi–nude entertainment in nonalcohol–serving, adult entertainment establishments (soda pop clubs), and made the business licensee responsible for any violations.

On May 28, 1985, the King County Council enacted ordinance 7216, which made substantial changes in KCC 6.08. Among other things, the new ordinance accomplished the following: (1) added a section of findings designed to support the need for the regulations, KCC 6.08.005; (2) required managers and entertainers working at any public place of amusement offering nude or semi–nude entertainment to obtain a license, KCC 6.08.024; and (3) made employees and entertainers working in soda pop clubs responsible for violating the standards of conduct, subjected violators to criminal penalties, KCC 6.08.120, and to license revocation or suspension, KCC 6.08.100.

The "standards of conduct" remained virtually unchanged, continuing to prohibit employees and entertainers from performing or simulating (a) certain sexual acts; (b) the touching of certain body parts; and from (c) displaying certain body parts. KCC 6.08.050(A)(5). The ordinance provides several exceptions, including KCC 6.08.050(A)(6), which allows display of certain body parts when the display occurs on a stage 18 inches high and 6 feet from the nearest patron (stage requirement); and KCC 6.08.050(D), which requires that the statute not be construed to prohibit a variety of constitutionally protected expression, including

exhibitions or dances that are not obscene, KCC 6.08-.050(D)(3) (nonobscene dance exception). The 1985 ordinance created a new section, KCC 6.08.050(G), which removed the blanket exemption for taverns and establishments holding liquor licenses, but continued to exempt them from the "standards of conduct and operation" provision, KCC 6.08.050. Because of this exemption, only soda pop club entertainers are subject to criminal penalties and license revocation/suspension for violating the "standards of conduct."

The four respondents work as licensed entertainers at a soda pop club located in King County. In late August and early September of 1985, respondents were charged in Federal Way District Court with violating the "standards of conduct."[2] Respondents denied the allegations and also challenged the ordinance's constitutionality in a pretrial motion to dismiss, which the district court denied. They then petitioned the King County Superior Court for review. During the petition's pendency, the King County Licensing Department suspended respondents' licenses to engage in topless dancing within King County.

Upon issuing a writ of review, and after a hearing and argument, the superior court dismissed the criminal com-

---

[2]Respondent Sandra Robinson was charged with violating standards (A)(5)(a), (b), and (c) for allegedly performing "a table dance during which she exposed her breasts below the areola, rubbing the same against a customer's face, exposed her pubic hair, touched the genital area of a customer, and performed an act simulating oral sex."

Respondent Shelly Stallard was charged with violating standards (A)(5)(a) and (b) for allegedly performing "a dance during which she sat on a customer's lap, rubbed her buttocks up and down against the customer's genital area, simulating sexual intercourse, and rubbed her breasts against the customer's face."

Respondent Karen M. O'Day was charged with violating standards (A)(5)(a), (b), and (c) for allegedly performing "a table dance during which she rubbed her buttocks on a customer's legs, exposed her pubic hair and performed an act simulating oral sex."

Respondent Kimberly Belshaw was charged with violating standards (A)(5)(b) and (c) for allegedly performing "a table dance during which she exposed her breasts below the areola, exposed her pubic hair and vaginal area, rubbed her breasts against a customer's hands and face, and rubbed her legs and chest against a customer's genital area." Findings of fact 2–5, Clerk's Papers, at 140.

plaints against the respondents with prejudice. The court concluded that the standards of conduct reached protected expression, and thus were unconstitutionally overbroad in violation of the state and federal constitutional right to free speech. The court further held that the discriminatory treatment afforded entertainers in soda pop establishments created a classification that violated the state and federal right to equal protection of the laws. The court rejected, however, respondents' challenge to the validity of the 1985 ordinance's emergency clause and their contention that imposition of both criminal penalties and license revocation/suspension constitutes double jeopardy in violation of the Fifth Amendment and article 1, section 9 of the Washington Constitution.

This court granted King County discretionary review. The County challenges the superior court's conclusions as to free speech and equal protection. Respondents renew additional free expression claims rejected by the superior court. They challenge the definition of obscenity contained in KCC 6.08.050(E) and argue that the stage requirement, KCC 6.08.050(A)(6), cannot be sustained as a reasonable time, place, and manner regulation. Respondents also renew their emergency clause challenge and their double jeopardy claim.

In considering the challenges to the conclusions entered by the court below, we note that under RCW 7.16-.030 the "writ of review" filed with the superior court is a writ of certiorari. *Seattle v. Williams,* 101 Wn.2d 445, 453–55, 680 P.2d 1051 (1984). Thus, the superior court acted in an appellate capacity, rather than as a trial court. *See Thomsen v. King Cy.,* 39 Wn. App. 505, 514, 694 P.2d 40 (1985). We therefore conduct a de novo review of the court's conclusions. *Smith v. Skagit Cy.,* 75 Wn.2d 715, 718, 453 P.2d 832 (1969); *Thomsen v. King Cy.,* 39 Wn. App. at 515.

### Free Speech Claims

This court has a duty, where feasible, to resolve

constitutional questions first under the provisions of our own state constitution before turning to federal law. *State v. Coe,* 101 Wn.2d 364, 373–74, 679 P.2d 353 (1984). Besides our responsibility to interpret Washington's Constitution, we must furnish a rational basis "for counsel to predict the future course of state decisional law." *State v. Gunwall,* 106 Wn.2d 54, 60, 720 P.2d 808 (1986). This opinion proceeds under a Washington Constitution analysis, noting the parallels and differences between the state and federal constitutions where relevant. Because article 1, section 5 provides greater protection of speech than the first and fourteenth amendments to the United States Constitution, our finding that the ordinance is constitutional under article 1, section 5 necessitates a similar finding under the First Amendment. *State v. Coe, supra.*

Here, the parties have not raised or argued the issue of whether article 1, section 5 provides more protection to obscene expression than does the First Amendment. Nor does the record indicate the presence or absence of specific harm arising from the obscene expression that is restricted by KCC 6.08. Given this dearth of analysis and evidence on this issue, we choose not to reach in this case the issue of whether article 1, section 5 protects obscene expression of this kind. Therefore, in this case we will proceed on a federal analysis of the narrow issue of whether obscenity is protected speech.

### A
#### OVERBREADTH

▮ Article 1, section 5 of the Washington Constitution and the first and fourteenth amendments to the United States Constitution protect freedom of speech. Pure conduct, on the other hand is not protected. *E.g., Seattle v. Buchanan,* 90 Wn.2d 584, 584 P.2d 918 (1978). Nude and semi–nude dancing come within the protection provided by the first and fourteenth amendments to the United States Constitution. *See, e.g., Schad v. Mount Ephraim,* 452 U.S. 61, 65, 68 L. Ed. 2d 671, 101 S. Ct. 2176 (1981); *Young v.*

*American Mini Theatres, Inc.,* 427 U.S. 50, 73 n.1, 49 L.
Ed. 2d 310, 96 S. Ct. 2440 (1976) (Powell, J., concurring);
*Kev, Inc. v. Kitsap Cy.,* 793 F.2d 1053, 1058 (9th Cir. 1986);
*Kitsap Cy. v. Kev, Inc.,* 106 Wn.2d 135, 140, 720 P.2d 818
(1986). However, although the First Amendment protects
the communication and expression of a nude dancer, public
nudity itself is conduct subject to regulation. *Kitsap Cy. v.
Kev, Inc.,* 106 Wn.2d at 140; *see also Kev, Inc. v. Kitsap
Cy.,* 793 F.2d at 1058. We now hold that article 1, section 5
similarly protects nude expression, but not nude conduct.
*See Seattle v. Buchanan, supra.*

We agree with the superior court, which apparently con-
cluded that the "performances" respondents allegedly
engaged in constitute pure conduct, unprotected by free
speech guaranties. However, an overly broad statute that
sweeps within its proscriptions protected expression is
unconstitutional under both the Washington and United
States Constitutions. *Federal Way Family Physicians, Inc.
v. Tacoma Stands Up for Life,* 106 Wn.2d 261, 267–68, 721
P.2d 946 (1986); *State v. Reyes,* 104 Wn.2d 35, 43, 700 P.2d
1155 (1985).

Because of the "sensitive nature of protected expression,"
and the need to prevent criminal sanctions from chilling
constitutionally protected expression, both this court and
the United States Supreme Court have fashioned a special
standing rule. *New York v. Ferber,* 458 U.S. 747, 768–69, 73
L. Ed. 2d 1113, 102 S. Ct. 3348 (1982); *see Reyes,* at 43. If
the County's regulations impermissibly burden protected
expression, respondents have standing to challenge the reg-
ulations' overbreadth even though "their activity is within
the permissible scope of the [ordinance] and even if such
constitutional overbreadth can be considered 'harmless
error' as applied to them." *State v. Regan,* 97 Wn.2d 47, 52,
640 P.2d 725 (1982); *see also Broadrick v. Oklahoma,* 413
U.S. 601, 611–12, 37 L. Ed. 2d 830, 93 S. Ct. 2908 (1973).

Washington's free speech guaranty requires us to pay
especially close attention to allegations of overbreadth.
Article 1, section 5 establishes freedom of speech as a pre-

ferred right. *Reyes,* at 43; *Coe,* at 374. Unlike the First Amendment, article 1, section 5 categorically rules out prior restraints on constitutionally protected speech under any circumstances. *Coe,* at 374–75. Regulations that sweep too broadly chill protected speech prior to publication, and thus may rise to the level of a prior restraint. *Coe,* at 373.

The United States Supreme Court, on the other hand, considers the overbreadth doctrine "strong medicine", employing it only as a "last resort." *New York v. Ferber,* 458 U.S. 747, 769, 73 L. Ed. 2d 1113, 102 S. Ct. 3348 (1982). Because KCC 6.08 regulates conduct, and not merely speech, an overbreadth challenge under the First Amendment cannot succeed unless the overbreadth is both real and substantial in relation to the ordinance's plainly legitimate sweep. *Ferber,* at 770; *Broadrick,* at 615. Because the Washington Constitution is less tolerant than the First Amendment of overly broad restrictions on speech, we must apply the standard of article 1, section 5 in considering whether KCC 6.08 is overbroad.

### 1. Standards of Conduct

Respondents challenge as facially overbroad the "standards of conduct" of KCC 6.08.050(A)(5):

> No employee or entertainer shall perform acts of or acts which simulate:
>     a. Sexual intercourse, masturbation, sodomy, bestiality, oral copulation, flagellation, or any sexual acts which are prohibited by law ["standard (a)"];
>     b. The touching, caressing or fondling of the breasts, buttocks or genitals ["standard (b)"]; or
>     c. The displaying of the pubic hair, anus, vulva or genitals ["standard (c)"]; except as provided for in subdivision 6 of this subsection and section 6.08.050 D.3 of this chapter.

Subdivision 6, referred to in standard (c) above, contains a "stage requirement", which provides that

> [n]o employee or entertainer shall have their breasts below the top of the areola, or any portion of the pubic hair, vulva or genitals, anus and/or buttocks exposed to view except upon a stage at least eighteen inches above

the immediate floor level and removed at least six feet from the nearest patron.

KCC 6.08.050(A)(6). Section 6.08.050(D)(3), also referred to in standard (c) above, is part of an overall limitation, which provides:

[Chapter 6.08] shall not be construed to prohibit:

1. Plays, operas, musicals, or other dramatic works which are not obscene ["nonobscene dramatic works exception"];

2. Classes, seminars and lectures held for serious scientific or educational purposes ["scientific or educational purposes exception"]; or

3. Exhibitions or dances which are not obscene ["nonobscene dance exception"].

KCC 6.08.050(A)(5) contains three separate and distinct standards of conduct, each of which deals with entirely different expressive activities. Only standard (c), which prohibits the display of certain body parts, expressly refers to the stage requirement and the nonobscene dance exception. The superior court found that standards (a) and (b) prohibit the simulation of certain acts, even if the entertainer is clothed, and that simulation of the proscribed acts "reaches into the realm" of constitutionally protected expression. Therefore, the court concluded that the standards of conduct impermissibly regulated protected expression.

The County challenges the court's conclusion, and argues that the ordinance's express reference to the stage requirement modifies all three standards of conduct. The County asserts that the standards permit expressive conduct of all kinds, subject only to the requirements that it (1) not be obscene and (2) occur on a stage. We disagree. Under the clear language of the ordinance, only standard (c) contains a reference to the stage requirement. Moreover, the County undoubtedly intended the stage exception to modify *only* standard (c). Each time the County sought to proscribe display of those body parts, it made the identical reference to the subsection (A)(6) stage requirement. *See* KCC 6.08-.050(A)(5)(c); KCC 6.08.050(A)(1). The plain language of

standards (a) and (b) applies regardless of whether the entertainer is clothed or not and regardless of whether the entertainer is on stage.

By themselves, the standards of conduct are overly broad and reach protected expression. However, the nonobscene dramatic works exception, the scientific or educational purposes exception and the nonobscene dance exception of KCC 6.08.050(D), read together with the standards of conduct, can limit chapter 6.08's application to pure conduct and obscene expression.

■ Where possible and appropriate, we will strive to construe a statute to uphold its constitutionality. *Reyes,* at 41. "If the invalid reach of a law can be cured, there is no reason to proscribe the statute's application to unprotected speech." *Reyes,* at 41. Here, a simple limiting construction cures the possible overbreadth infirmities of KCC 6.08.050.

Unfortunately, KCC 6.08.050 is not precisely drafted. We have no doubt, however, that the County intended to proscribe only obscene nude or semi–nude conduct, devoid of any expressive qualities and unprotected by article 1, section 5. We therefore construe the ordinance to restrict only conduct and unprotected obscene expression.

Standards (a) and (b) proscribe the actual performance or simulation of the listed conduct except to the extent that the conduct occurs as part of nonobscene expression as defined in KCC 6.08.050(D)(1), (2), and (3). Arguably, the list of nonobscene expressions does not expressly cover all possible examples of protected expression, such as a singing performance, a comedian's routine, or the various types of political expression. Nonetheless, we find that nonobscene "exhibitions", specifically exempted by subsection (D)(3), sweeps within its protective ambit both the comedian's and the singer's performances. The County could not have intended to prohibit nonobscene political performances and presentations. We therefore construe KCC 6.08.050(D) as excepting nonobscene political expression along with the expressly listed examples of nonobscene expression. *See, e.g., State v. Clark,* 96 Wn.2d 686, 690, 638 P.2d 572 (1982)

(the court will not construe statutes in a forced, narrow, or overly strict manner so as to defeat the obvious intent of the Legislature).

Although the standard (c) prohibition against the display of certain body parts expressly refers only to the exception for nonobscene exhibitions and dances, the other exceptions for nonobscene expression also apply by their own terms. Consequently, standard (c)'s prohibition does not apply if (1) the display "of the pubic hair, anus, vulva or genitals" occurs as part of nonobscene expression, as set out in KCC 6.08.050(D), *and* (2) as long as the display of these body parts occurs on a stage situated pursuant to KCC 6.08-.050(A)(6). Construed in this manner, the standards of conduct, read together with the exceptions of 6.08.050(D), do not restrict protected expression.

Once this court construes a statute or ordinance, that construction becomes as much a part of the legislation as if it were originally written into it. *State v. Regan, supra* at 51–52. This court has authoritatively construed the regulation so that it is no longer susceptible of application to protected speech. *Gooding v. Wilson,* 405 U.S. 518, 520, 31 L. Ed. 2d 408, 92 S. Ct. 1103 (1972); *Ferber,* at 769 n.24. The standards of conduct are therefore not overbroad.[3]

### 2. Definition of Obscenity

Respondents contend that the definition of obscenity contained in KCC 6.08.050(E) is overly broad and renders the entire 1985 ordinance unconstitutional. Although respondents raise this issue for the first time on appeal, we will consider their challenge because we uniformly review such issues when they concern a constitutional right. *State v. Regan,* 97 Wn.2d 47, 50, 640 P.2d 725 (1982).

■ Respondents invoke *State v. Regan, supra,* and contend that the "patently offensive" prong of the obscenity definition (KCC 6.08.050(E)(2)) is unconstitutionally overbroad because it fails to require the measurement of offen-

---

[3]As mentioned above, this opinion does not reach the issue of whether article 1, section 5 protects obscenity because that issue was not presented by the parties.

siveness against community standards. In *Regan,* however, this court held an obscenity definition that failed expressly to require a patently offensive determination to be unconstitutionally overbroad under article 1, section 5. *Regan,* at 52–54. By contrast, respondents concede that the County's definition contains the patently offensive requirement, basing their challenge only on the definition's failure to expressly require offensiveness to be measured by contemporary community standards.

The trier of fact must use the proper measure of "patently offensive" to determine whether expression is obscene. The lack of the measure or detailed definition in the express language of the statute does not cause the statute to be unconstitutional where it is possible to give the trier of fact the necessary guidance. Applying the guidelines of the United States Supreme Court, *see Miller v. California,* 413 U.S. 15, 24, 37 L. Ed. 2d 419, 93 S. Ct. 2607 (1973); *Smith v. United States,* 431 U.S. 291, 300–01, 52 L. Ed. 2d 324, 97 S. Ct. 1756 (1976), we hereby construe KCC 6.08-.050(E)(2) as requiring "patently offensive" to be measured against community standards. The definition of KCC 6.08-.050(E)(2) taken together with our authoritative construction is not unconstitutionally overbroad. *See State v. Regan, supra* at 51–52. Of course the court must properly instruct the jury to reflect this construction at respondents' trial.

## B
### STAGE REQUIREMENT

Respondents contend that the requirement of KCC 6.08-.050(A)(6) that certain body parts may not be exposed to view except upon a stage at least 18 inches above the immediate floor level and removed at least 6 feet from the nearest patron is not a valid time, place, and manner restriction under article 1, section 5 and the First Amendment.

Article 1, section 5 regulations on protected expression may impose time, place, and manner restrictions, but only

if they (1) are content neutral, (2) are narrowly tailored to serve a compelling state interest, and (3) leave open ample alternative channels of communication. *Bering v. Share,* 106 Wn.2d 212, 234, 721 P.2d 918 (1986), *cert. dismissed,* 93 L. Ed. 2d 990 (1987).

■ Before we consider whether the stage requirement is a valid time, place, and manner restriction, we must determine whether it regulates protected expression or whether it regulates only conduct. Pure conduct does not enjoy the protections of either article 1, section 5 or the First Amendment. *Seattle v. Buchanan,* 90 Wn.2d 584, 584 P.2d 918 (1978).

Unlike similar local regulatory regimes that have been invalidated, the stage requirement does not prohibit nude entertainment. *See, e.g., Doran v. Salem Inn, Inc.,* 422 U.S. 922, 45 L. Ed. 2d 648, 95 S. Ct. 2561 (1975); *BSA, Inc. v. King Cy.,* 804 F.2d 1104 (9th Cir. 1986) (invalidating a Pierce County ban on nude dancing); *Mickens v. Kodiak,* 640 P.2d 818 (Alaska 1982). The stage requirement allows any type of expression by nude entertainers as long as the nude expression is made a minimal distance from patrons.

Respondents have failed to demonstrate how the stage requirement infringes on their right to free expression rather than simply their conduct. *Cf. BSA, Inc. v. King Cy.,* 804 F.2d at 1111. The requirement is aimed not at expression, but only public sexual contact between entertainers and patrons by keeping nude entertainers out of reach of the nearest patron. *See BSA, Inc. v. King Cy.,* 804 F.2d at 1111; *Kev, Inc. v. Kitsap Cy.,* 793 F.2d at 1061. We conclude that the 18–inch stage requirement of KCC 6.08-.050(A)(6) regulates only conduct, and not expression protected by article 1, section 5.

Both this court and the Ninth Circuit Court of Appeals have upheld similar stage or distance requirements in recent years based on determinations that the stage requirements are valid time, place, and manner restrictions. *BSA, Inc. v. King Cy.,* 804 F.2d 1104 (9th Cir. 1986); *Kev, Inc. v. Kitsap Cy.,* 793 F.2d 1053 (9th Cir. 1986); *Bolser v.*

*State Liquor Control Bd.,* 90 Wn.2d 223, 580 P.2d 629 (1978). In each of those cases the reviewing court questioned whether the stage requirement implicates freedom of expression at all, but then makes a time, place, and manner analysis. "[The stage requirement] does not diminish the expressiveness of nude entertainment. . . . Even assuming, however, that the distance requirement does burden protected expression, it is a valid place or manner regulation." *BSA, Inc.,* at 1111. "[T]he dancer's erotic message may be *slightly* less effective from ten feet . . ." (Italics ours.) *Kev, Inc. v. Kitsap Cy., supra* at 1061. "If [the stage requirement] is an infringement [of protected expression], we conclude it is at most minimal." *Bolser,* at 228. Because of the lack of any colorable claim that the regulation involves expression, we will not give respondents the benefit of an analysis that would consider the stage requirement as a time, place, or manner restriction. We hold that it regulates only conduct, which is not protected under article 1, section 5 or the First Amendment.

## VAGUENESS

█ Respondents argue that KCC 6.08.050 is unconstitutionally vague as applied to them. Because respondents cite no state authority and no state constitutional provision, we consider their void for vagueness challenge as based solely on the United States Constitution. Under the Fourteenth Amendment, a penal statute is void for vagueness if it is framed in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application. *Connally v. General Constr. Co.,* 269 U.S. 385, 391, 70 L. Ed. 322, 46 S. Ct. 126 (1926); *Papachristou v. Jacksonville,* 405 U.S. 156, 162, 31 L. Ed. 2d 110, 92 S. Ct. 839 (1972). The Supreme Court has repeatedly emphasized that where First Amendment freedoms are at stake a greater degree of specificity and clarity of purpose is essential. *See, e.g., Erznoznik v. Jacksonville,* 422 U.S. 205, 217–18, 45 L. Ed. 2d 125, 95 S. Ct. 2268 (1975); *Kev, Inc. v. Kitsap Cy.,* 793 F.2d 1053, 1057 (9th Cir. 1986). However,

we find that KCC 6.08.050 is not unconstitutionally vague.

Respondents contend that various subsections of KCC 6.08.050 contain unreconcilable differences that force them to guess which sections apply to their dance presentation, thereby making them proceed at their own risk to assert their First Amendment rights. Respondents, however, have created differences where none exist. For example, respondents characterize KCC 6.08.050(A)(1) as creating a right to dance in any manner or place, entirely unclothed, so long as the dance is not obscene. This broad "right" therefore conflicts with the stage requirement, under which all nudity must occur on a stage. In reality, however, no conflict exists because subsection (A)(1) *prohibits* exposing certain body parts to public view *except* as provided for by the stage requirement and by the exception for nonobscene dances or exhibitions.

Respondents next contend that the broad "right" contained in subsection (A)(1) conflicts with KCC 6.08.050-(A)(5)(a) and (b), which respondents contend absolutely prohibit sexual acts or touching, actual or simulated, whether obscene or not. As we pointed out earlier in discussing respondents' overbreadth claim, KCC 6.08 in its entirety, including the "standards of conduct", is limited by KCC 6.08.050(D)(1), (2), and (3), which exempts nonobscene expressive activities, including exhibitions or dances. KCC 6.08 gives respondents sufficient notice of what conduct is prohibited.

Respondents also challenge KCC 6.08 as vague because it gives discretion to enforcers to determine what is protected expression. The Fourteenth Amendment void for vagueness doctrine requires legislative bodies to define criminal sanctions clearly, so that "ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* 461 U.S. 352, 357, 75 L. Ed. 2d 903, 103 S. Ct. 1855 (1983). Notice, however, is not the most important aspect. Rather, the vagueness doctrine is most concerned with whether a legislature established minimal guidelines to

govern enforcement. *Kolender,* at 358. The guidelines established by the County in KCC 6.08.050 evolve out of its definition of obscenity, KCC 6.08.050(E), which like that used in RCW 7.48A.010, conforms with federal requirements. *See Miller v. California,* 413 U.S. 15, 24, 37 L. Ed. 2d 419, 93 S. Ct. 2607 (1973). We reject respondents' Fourteenth Amendment vagueness challenge to KCC 6.08.050.

## EQUAL PROTECTION

The County argues that the superior court erred in invalidating portions of KCC 6.08 as violative of respondents' right to equal protection of the law under article 1, section 12 of the Washington Constitution and the fourteenth amendment to the United States Constitution. We agree, and hold that KCC 6.08 does not deny equal protection to respondents.

Despite substantial differences in wording, past decisions where counsel have not presented the court with an analysis of the history of our constitution and cases from other states have observed that the Fourteenth Amendment's equal protection clause and the privileges and immunities provision (Const. art. 1, § 12) of the Washington Declaration of Rights provide similar protections.[4] *See, e.g., Cosro, Inc. v. Liquor Control Bd.,* 107 Wn.2d 754, 759, 733 P.2d 539 (1987). Lacking a persuasive argument to apply a different analysis under the Washington Constitution, we have followed the federal equal protection analysis, under which we apply strict scrutiny to any governmental classification that creates an inherently suspect class or affects a fundamental right. *Petersen v. State,* 100 Wn.2d 421, 444, 671

---

[4]Under the United States Constitution, a state shall not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. 14, § 1. The Washington Declaration of Rights provides:

"No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations." Const. art. 1, § 12.

P.2d 230 (1983).[5] All other classifications need only with-stand minimal, rational basis scrutiny, except for classifica-tions that trigger an intermediate level of scrutiny under article 1, section 12. *See State v. Phelan,* 100 Wn.2d 508, 513, 671 P.2d 1212 (1983); *see also In re Mayner,* 107 Wn.2d 512, 516–17, 730 P.2d 1321 (1986). Our determina-tion of whether a class is inherently suspect in the state of Washington or whether a fundamental right explicitly or implicitly guaranteed by the Washington Constitution has been affected may differ from Supreme Court conclusions.[6] As a general rule, however, the requirements of Washing-ton's privileges and immunities provision are at least as stringent as those of the federal equal protection clause. *Cosro, Inc.,* at 759; *Petersen,* at 444.

Because KCC 6.08.050(G) exempted taverns and estab-lishments holding liquor licenses from the standards of conduct, the superior court reasoned that the County had created two classes of adult entertainers, only one of which is subject to criminal penalties for standard of conduct vio-lations. The County does not dispute the fact that it dis-

---

[5]At least one scholar has pointed out that "Jacksonian equality provisions", such as article 1, section 12, differ in text, origin, and focus from the federal equal protection provision. Williams, *Equality Guarantees in State Constitutional Law,* 63 Tex. L. Rev. 1195, 1206–08 (1985). In addition, the Oregon Supreme Court has reviewed the history of Or. Const. art. 1, § 20, upon which our own article 1, sec-tion 12 is based, and concluded that the federal level of scrutiny analysis is inap-propriate. *In re Williams,* 294 Or. 33, 42, 653 P.2d 970, 975 (1982). Because respondents, like other claimants under article 1, section 12, have not made a well researched and persuasive argument on why we should recognize a distinction between the state and federal provisions, we will not take it upon ourselves to scrutinize the older state pronouncements cited as the source of Washington's equal protection doctrine. *See, e.g., State v. Pitney,* 79 Wash. 608, 610, 140 P. 918 (1914); *Redford v. Spokane St. Ry.,* 15 Wash. 419, 421, 46 P. 650 (1896).

[6]*See, e.g., Seattle v. State,* 103 Wn.2d 663, 672–73, 694 P.2d 641 (1985) (hold-ing that Const. art. 1, § 19 provides additional protection for voting rights); *State v. Rice,* 98 Wn.2d 384, 399–400, 655 P.2d 1145 (1982) (under Const. art. 1, § 12, the freedom from physical restraint is a fundamental interest for the purpose of equal protection analysis); *Hanson v. Hutt,* 83 Wn.2d 195, 201, 517 P.2d 599 (1973) (holding that even prior to the passage of the state Equal Rights Amend-ment, a classification based on sex is inherently suspect).

criminates between adult entertainers according to the type of establishment that employs them. Consequently, we focus first on whether the superior court applied the proper level of scrutiny in determining that the County could not justify its discriminatory classification. *See Convention Ctr. Coalition v. Seattle,* 107 Wn.2d 370, 378, 730 P.2d 636 (1986).

■ Having found that the standards of conduct impermissibly burdened the fundamental right of free speech, the superior court applied strict scrutiny, requiring the County to justify its classification by establishing that it served a compelling governmental interest. Respondents' freedom of speech, however, has not been affected by the imposition of criminal sanctions. We have adopted a limiting construction and held the standards of conduct constitutional. By providing for criminal sanctions when a soda pop club employee violates the standards, the County does not infringe upon the violator's right to free expression. While license suspension and revocation deprive respondents of their livelihood and, thus, constitute a serious sanction, license requirements and sanctions have not been shown to infringe on any fundamental interest for the purpose of equal protection analysis. *See Darrin v. Gould,* 85 Wn.2d 859, 540 P.2d 882 (1975). Because respondents offer no other grounds for heightened scrutiny, the County's classification need only withstand rational basis scrutiny. *Convention Ctr. Coalition,* at 378.

To withstand rational basis scrutiny the classification must (1) apply alike to all members in the designated class, (2) be based on some reasonable grounds for distinguishing between those within and those without the class; and (3) have a rational relationship to the purpose of the legislation. *Convention Ctr. Coalition,* at 378–79. Here the ordinance satisfies the first element. The classification includes all employees and entertainers of soda pop establishments. As to the second element, the County has at least one valid basis for making a reasonable distinction between alcohol–serving and soda pop adult entertainment establishments.

A patron must be at least 21 years old to enter adult entertainment establishments that serve alcohol, while to patronize soda pop clubs one need only be 18 years old. It is reasonable to distinguish between the two classes of entertainers based on the age of their clientele. Finally, in applying the third element, we conclude that the imposition of criminal and license sanctions solely on soda pop club entertainers and employees has a rational connection to the County's need to protect the younger patrons.[7]

Because the County's decision to exempt taverns and premises holding a liquor license from the standards of conduct has withstood rational basis scrutiny, the County has successfully justified the discriminatory aspects of KCC 6.08.050. We reverse the superior court's order, and hold that KCC 6.08.050 does not deny respondents equal protection of the law under article 1, section 12 or the Fourteenth Amendment.

## OTHER CONSTITUTIONAL CHALLENGES

Respondents renew two additional constitutionally based challenges previously rejected by the superior court. First, respondents contend that the entire 1985 ordinance is void because the emergency clause unconstitutionally eliminated the people's referendum power guaranteed by article 2, section 1 of the Washington Constitution. This challenge is without merit. To make a proper challenge respondents must look to the King County Charter's referendum provision, King County Charter § 230.40, rather than article 2, section 1, which does not apply to municipal governments such as King County. *Citizens for Financially Responsible Gov't v. Spokane,* 99 Wn.2d 339, 348–49, 662 P.2d 845 (1983). In any event, our recent decision in *State v. Hayes,* 108 Wn.2d 344, 738 P.2d 276 (1987) precludes respondents'

---

[7]Although the superior court concluded that the license requirement applied only to soda pop clubs, we disagree. Taverns and liquor licensees are exempted only from the standards of conduct and operation. KCC 6.08.050(G). The licensing system is found in KCC 6.08.024, and applies to all managers or entertainers working at public places of amusement offering adult entertainment.

challenge.

In *Hayes,* we rejected a challenge to a state statute's emergency clause. We held the challenge moot because, regardless of the emergency clause's validity, the statute became effective when the 90–day waiting period prescribed by Const. art. 2, § 1 (amend. 72) elapsed without any person filing a referendum petition. *Hayes,* at 349. We apply the same rule to the King County Charter. Here, the King County Council enacted the challenged ordinance, along with its emergency clause, on May 28, 1985. Pursuant to section 230.70 of the county charter, the ordinance became effective 10 days after enactment if no proposed referendum petition was filed. If a petition was filed, but the referendum failed to qualify for the ballot, the ordinance became effective 45 days after enactment. Although the record is silent on whether a filing occurred within 10 days, no referendum ever took place. Therefore, the ordinance took effect no later than July 15. Even if the emergency clause were invalid, the challenged ordinance became effective well before the respondents were cited for violations in late August/early September 1985. Consequently, respondents' constitutional challenge to the emergency clause is moot.

Finally, respondents renew their contention that the revocation or suspension of their licenses, KCC 6.08.100(C), is punitive in nature, and added to the ordinance's criminal sanctions, KCC 6.08.120, places them in double jeopardy in violation of the fifth amendment to the United States Constitution and article 1, section 9 of the Washington Constitution. Historically, whether under article 1, section 9 or the Fifth Amendment, we have evaluated double jeopardy challenges in an identical manner, and respondents have offered no reason why we should not continue to do so. The double jeopardy clause protects respondents "against multiple punishments for the same offense". *In re Mayner,* 107 Wn.2d 512, 520, 730 P.2d 1321 (1986). However, "[a] double jeopardy violation does not occur simply because two adverse consequences stem from the same act." *In re May-*

*ner,* at 521. Double jeopardy does not apply "unless the sanction sought to be imposed in the second proceeding is punitive in nature so that the proceeding is essentially criminal." *Beckett v. Department of Social & Health Servs.,* 87 Wn.2d 184, 188, 550 P.2d 529 (1976); *see Emory v. Texas Bd. of Med. Examiners,* 748 F.2d 1023, 1026 (5th Cir. 1984).

Respondents invoke *Seattle v. Bittner,* 81 Wn.2d 747, 755, 505 P.2d 126 (1973) to argue that the plain language demonstrates that the license revocation/suspension provision is premised on deterrent, retributive, and punitive motivations. Respondents' reliance on *Bittner* for the proposition that a statute may not provide for both criminal penalties and civil license revocation is ill founded. The *Bittner* court ruled that the city could not use the fact of a prior criminal conviction as the basis for denying a license to operate a movie theater. By contrast, respondents' licenses are subject to revocation not because of criminal citations, but rather because they violated the terms and conditions of their licenses. KCC 6.08.100(C).

██ In respondents' cases, we conclude that the determinative factors for resolving a double jeopardy claim are whether license revocation has a rational connection to some purpose other than retribution or deterrence, and whether the sanction appears excessive in relation to the alternative purpose. *See Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168–69, 9 L. Ed. 2d 644, 83 S. Ct. 554 (1963).[8] Revocation of a driver's license does not violate double jeopardy, because rather than punishment, it is an exercise of the police power for the protection of the users of the

---

[8]Factors identified by the Supreme Court to determine if a sanction is penal or regulatory include: (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment—retribution and deterrence; (5) whether the behavior to which it applied is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable to it; and (7) whether it appears excessive in relation to the alternative purpose. *Mendoza–Martinez,* 372 U.S. at 168–69.

highways. *State v. Scheffel,* 82 Wn.2d 872, 879, 514 P.2d 1052 (1973), *appeal dismissed,* 416 U.S. 964 (1974). We agree with the superior court, which analogized the license sanction provision, KCC 6.08.100(C), to similar sanctions imposed on drivers and professional licensees, and concluded that no double jeopardy violation existed. The County has a legitimate interest in protecting 18– to 21–year–olds from illegal public sexual contact and from the other types of criminal activity historically linked to the adult entertainment industry.

We conclude that the County intended to impose sanctions against a dancer's license as a remedial measure, aimed at protecting the younger clientele that frequents soda pop clubs. In addition, we conclude that license suspension or revocation for up to 1 year is not so punitive a sanction as to negate that intention. *See United States v. Ward,* 448 U.S. 242, 248–49, 65 L. Ed. 2d 742, 100 S. Ct. 2636 (1980); *Beckett,* at 188–90. We reject respondents' double jeopardy challenge under both federal and state law, and affirm the trial court.

### CONCLUSION

Although we affirm the superior court's rejection of respondents' emergency clause and double jeopardy challenges, we find that the court erred in invalidating portions of KCC 6.08. On the question of the regulations' overbreadth, we find it appropriate to cure any constitutional infirmities by adopting a limiting instruction. On the equal protection question, we hold that respondents failed to identify a fundamental interest affected by the challenged regulations, and that the County justified its discriminatory classification under the rational basis test. Because we reverse the dismissal of the charges filed against respondents, we remand to the Federal Way District Court for trial.

PEARSON, C.J., and BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.