GORDON McCLOUD, J. (dissenting)
¶ 34 The Fair Campaign Practices Act (FCPA), chapter 42.17A RCW, establishes requirements for political spending and reporting. One FCPA statute requires people and organizations that make certain political expenditures to report those expenditures to the Public Disclosure Commission. It is well established that such a reporting requirement implicates the First Amendment right to free speech. U.S. CONST . amend. I ; Utter v. Bldg. Indus. Ass'n of Wash., 182 Wash.2d 398, 341 P.3d 953 (2015) ; Voters Educ. Comm. v. Public Disclosure Comm'n, 161 Wash.2d 470, 166 P.3d 1174 (2007) ; Human Life of Wash. Inc. v. Brumsickle, 624 F.3d 990 (9th Cir. 2010).
*802 ¶ 35 In this case, both the trial court and the Court of Appeals expressly acknowledged that the FCPA is ambiguous with respect to whether it compels reporting of independent expenditures in support of initiatives not yet on the ballot in noncharter cities. Clerk's Papers (CP) at 102 (order); Verbatim Report of Proceedings (May 13, 2016) (VRP) at 23; State v. Evergreen Freedom Found., 1 Wash. App. 2d 288, 303, 404 P.3d 618 (2017) (published in part). The majority implicitly acknowledges the same thing. Majority at 811. The majority resolves that ambiguity against the speaker and in favor of the government. But resolving an ambiguity in a statute implicating free speech against the speaker and in favor of the government violates controlling *816 precedent of this court and of the United States Supreme Court.
¶ 36 I therefore respectfully dissent.
BACKGROUND
¶ 37 The State brought a civil enforcement action against Evergreen Freedom Foundation (Foundation) for failing to report independent expenditures in support of several "ballot propositions." CP at 5-10 (State's complaint); see also RCW 42.17A.255(3) (requiring reporting of independent expenditures in support of ballot propositions). Under the FCPA, a "ballot proposition" is
any "measure" as defined by RCW 29A.04.091, or any initiative, recall, or referendum proposition proposed to be submitted to the voters of the state or any municipal corporation, political subdivision, or other voting constituency from and after the time when the proposition has been initially filed with the appropriate election officer of that constituency before its circulation for signatures.[1 ]
Former RCW 42.17A.005(4) (2014), recodified as RCW 42.17A.005(5) ( LAWS OF 2018, ch. 304, § 2) (emphasis added).
*803 ¶ 38 The Foundation admits that it did not report the expenditures at issue here-free legal representation for citizens attempting to place initiatives on the ballot in their municipalities. CP at 14-18 (Foundation's answer). The Foundation defends itself on the ground that its expenditures were not reportable. It argues that the FCPA's RCW 42.17A.255 requires a person or organization to report expenditures for "ballot propositions" "after" the submission to the election officer, which is "before its circulation for signatures." But the initiatives at issue here were not submitted to the election officer before circulation for signatures. The Foundation therefore concludes that those initiatives did not constitute ballot propositions within the meaning of former RCW 42.17A.005(4). CP at 22-28 (Foundation's motion to dismiss).
¶ 39 The Foundation continues that even if the initiatives did constitute ballot propositions within the meaning of former RCW 42.17A.005(4), that definition-particularly the language italicized above-is unconstitutionally vague as applied in this case. VRP at 8-9; Foundation's Suppl. Br. 13-17; Wash. Supreme Court oral argument, State v. Evergreen Freedom Found., No. 95281-7 (June 28, 2018), at 9 min., 18 sec. through 10 min., 32 sec., video recording by TVW, Wash. State's Public Affairs Network, https://www.tvw.org/watch/?eventID=2018061095.
¶ 40 The language of the statute defining "ballot proposition" is certainly confusing as applied to this case as the trial court, appellate court, and majority all note. The reason is that in this case, citizens were attempting to place initiatives on the ballot in three noncharter cities: Sequim, Shelton, and Chelan.[2] CP at 7. The initiative process in noncharter cities differs from the initiative process for statewide measures and the initiative process for certain charter cities. In noncharter cities, an initiative's proponent *804 gathers signatures first and officially files the initiative with the city after. By contrast, at the statewide level and in certain charter cities, the proponent files first and gathers signatures after. Compare RCW 35.17.260 (establishing procedures for initiatives in cities with the commission form of government) and RCW 35A.11.100 (generally adopting for code cities the initiative procedures used in cities with the commission form of government), with chapter 29A.72 RCW (establishing procedures for statewide initiatives). See also RCW 35.22.200 (recognizing that charter cities "may provide for direct legislation by the people through the initiative"); e.g., SEATTLE CITY CHARTER art. IV, § 1.B; SEATTLE MUNICIPAL CODE ch. 2.08; TACOMA CITY CHARTER art. II, § 2.19.
¶ 41 There is no dispute that former RCW 42.17A.005(4) would have covered the Sequim, Shelton, and Chelan initiatives if they had made it onto the ballot, because at that *817 point they would have fallen within the definition of reportable "measures" in cross-referenced RCW 29A.04.091. The issue in this case is whether former RCW 42.17A.005(4) encompasses initiatives not yet on the ballot in such noncharter cities.[3]
¶ 42 The trial court concluded that the tension between the statute's language and the initiative process in noncharter cities could not be resolved. It noted that it had "difficulty working through [the statutes] and understanding the position of the parties [ ] because there is not a clearly stated policy regarding this kind of a situation ...." VRP at 23. It therefore held that former RCW 42.17A.005(4) was "ambiguous and vague." Id. Accordingly, it granted the Foundation's CR 12(b)(6) motion to dismiss for failure to *805 state a claim on which relief could be granted. CP at 102 (order).
¶ 43 The Court of Appeals agreed that former RCW 42.17A.005(4) was "ambiguous" and added that the statute was "confusing." 1 Wash. App. 2d at 302-03, 404 P.3d 618. But it reversed the trial court's decision to dismiss on the ground that former RCW 42.17A.005(4) encompassed initiatives not yet on the ballot in noncharter cities. The Court of Appeals acknowledged that its interpretation of former RCW 42.17A.005(4) disregarded the "literal interpretation" of the statute's text. Id. at 304, 404 P.3d 618. That court explicitly stated that it "can and must ignore statutory language." Id. at 305, 404 P.3d 618.
¶ 44 The Foundation petitioned for review, which we granted. State v. Evergreen Freedom Found., 190 Wash.2d 1002, 413 P.3d 11 (2018).
ANALYSIS
I. Standard of Review
¶ 45 We review a trial court's grant of a CR 12(b)(6) motion to dismiss de novo. FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc., 180 Wash.2d 954, 962, 331 P.3d 29 (2014) (citing Kinney v. Cook, 159 Wash.2d 837, 842, 154 P.3d 206 (2007) ).
II. The Plain Language of Former RCW 42.17A.005(4) Is Ambiguous as Applied to Ballot Propositions Not Yet on the Ballot in Noncharter Cities
¶ 46 In interpreting a statute such as former RCW 42.17A.005(4), "[t]he court's fundamental objective is to ascertain and carry out the Legislature's intent. ..." Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wash.2d 1, 9, 43 P.3d 4 (2002). The court discerns the legislature's intent by conducting a plain-meaning analysis-that is, by examining the statute's text and context. Id. at 11-12, 43 P.3d 4. "Of course, if, after this inquiry, the statute remains susceptible to more than one reasonable meaning, the statute is ambiguous and *806 it is appropriate to resort to aids to construction, including legislative history." Id. at 12, 43 P.3d 4 (citing Cockle v. Dep't of Labor & Indus., 142 Wash.2d 801, 808, 16 P.3d 583 (2001) ; Timberline Air Serv., Inc. v. Bell Helicopter-Textron, Inc., 125 Wash.2d 305, 312, 884 P.2d 920 (1994) ).
¶ 47 The language of former RCW 42.17A.005(4) perfectly tracks the initiative process for statewide measures and the initiative process for certain charter cities. It states that a "ballot proposition" is "any initiative ... proposed to be submitted to the voters of the state or any ... other voting constituency from and after the time when the proposition has been initially filed with the appropriate election officer of that constituency before its circulation for signatures." Former RCW 42.17A.005(4). A statewide measure or an initiative in a charter city following the statewide process is "filed ... before its circulation for signatures." Id.
¶ 48 But the language of former RCW 42.17A.005(4) does not perfectly track the initiative process in noncharter cities. An initiative in a noncharter city is not "filed ... before its circulation for signatures." Id. It is filed after its circulation for signatures. Thus, as the majority recognizes, the text of former *818 RCW 42.17A.005(4) is "at odds" and in "tension" with the initiative process in noncharter cities. Majority at 811.
III. The Majority Impermissibly Relies on Legislative History To Interpret Former RCW 42.17A.005(4) 's Plain Meaning
A. The Majority Relies on Former RCW 42.17A.005(4) 's Underlying History To Interpret the Statute
¶ 49 The majority resolves that tension by relying on the statute's underlying history. It compares the definition of "ballot proposition" as enacted by the voters in 1972 with the definition of "ballot proposition" as amended by the *807 legislature in 1975.[4] The 1975 amendment made the following changes:
"Ballot proposition" means any "measure" as defined by [ RCW 29A.04.091 ], or any initiative, recall, or referendum proposition proposed to be submitted to the voters of ( (any specific) ) the state or any municipal corporation, political subdivision or other voting constituency ( (which) ) from and after the time when such proposition has been initially filed with the appropriate election officer of that constituency [before] its circulation for signatures.
LAWS OF 1975, 1st Ex. Sess., ch. 294, § 2(2).
¶ 50 The State argues-and the majority accepts-that because the 1972 " 'definition already incorporated propositions as soon as they were filed and [because the 1972 definition] already incorporated signature gathering for state initiatives ... there was no need to add the phrase "[before] its circulation for signatures" unless the legislature intended to clarify that the definition also covers the signature-gathering period for local propositions.' " Majority at 811 (quoting State of Washington's Suppl. Br. at 9). I agree.
B. Underlying History Is Legislative History, Not Context
¶ 51 I disagree, however, with the majority that that conclusion is plain. The majority characterizes the changes that the legislature makes to a statute from one session to the next as part of the statute's context. That information is not the sort of context that this court had in mind, however, when it incorporated context into our plain-meaning analysis in Campbell & Gwinn.
¶ 52 In Campbell & Gwinn, we were concerned about a line of a cases that-in the name of plain meaning-had *808 employed a method of interpretation that effectively isolated statutory text from its surrounding scheme. 146 Wash.2d at 9, 43 P.3d 4 ; see also Habitat Watch v. Skagit County, 155 Wash.2d 397, 417, 120 P.3d 56 (2005) (Chambers, J., concurring) ("[W]e ... often interpreted the plain meaning of the statute section by section, without appropriate consideration for the legislature's overall plan contained within the four comers of the act."). We disavowed that line of cases and held that text's meaning must be derived from its words as well as its context. Campbell & Gwinn, 146 Wash.2d at 11-12, 43 P.3d 4. Instead of scrutinizing a particular term in a vacuum, a court must consider "all that the Legislature has said in the statute and related statutes." Id. at 11, 43 P.3d 4.
¶ 53 The majority goes beyond that, however. It relies on historical information that is not even part of the FCPA as it existed in 2014 when the Foundation provided the free legal representation at issue here. Hence, no reader would have consulted it to figure out whether expenditures were reportable in this context.
¶ 54 Instead, an initiative proponent in 2014 would have read former RCW 42.17A.005(4) and found it ambiguous-even in context with the rest of the FCPA-with respect to initiatives not yet on the ballot in noncharter cities. A person could not be faulted for reading the latter portion of the statute that begins with "from and after the time [of filing]" and ends with "before its circulation for signatures" as modifying and limiting the text "any municipal corporation, political subdivision, or other voting constituency."
*819 In fact, that is arguably the more grammatical reading. The statute's unambiguous application to statewide measures and initiatives in certain charter cities-places like Seattle and Tacoma-only reinforces its ambiguity as to initiatives not yet on the ballot in noncharter cities. That is so because the statute still has a purpose, even if one concludes that it does not apply to initiatives not yet on the ballot in noncharter cities. Indeed, the legislature might reasonably have intended the statute to apply in the pre-ballot stage *809 only at the statewide level and in the big cities where the political stakes, moneyed interests, and potential for mischief might be considered greatest. A plausible reading is that the statute does not apply to noncharter cities like Sequim, Shelton, and Chelan. The liberal construction mandate of RCW 42.17.001(11) would not alter that reading.
¶ 55 Thus, the majority's interpretation of the "plain meaning" of former RCW 42.17A.005(4) is really based on a comparison with a prior, historical, version of the statute-the 1972 version that the 1975 legislature amended. But while the legislative history can help courts resolve ambiguity in a statute, it cannot make ambiguous language any less ambiguous to the reader. As applied to the circumstances of this case, former RCW 42.17A.005(4) is ambiguous.[5]
IV. Controlling Rules of Constitutional Law Bar This Court from Enforcing an Ambiguous Statute That Implicates Free Speech Rights
¶ 56 Under controlling decisions of this court and of the United States Supreme Court, an ambiguity is fatal to a statute implicating constitutional rights. "Under the Fourteenth Amendment, a statute may be void for vagueness 'if it is framed in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application.' " Voters Educ. Comm., 161 Wash.2d at 484, 166 P.3d 1174 (2007) (quoting O'Day v. King County, 109 Wash.2d 796, 810, 749 P.2d 142 (1988) ); U.S. CONST . amend. XIV. That standard is particularly strict when, as in this case, the First Amendment right to free speech is implicated. Id. at 485, 166 P.3d 1174 ("[T]he Supreme Court has 'repeatedly emphasized that where First Amendment freedoms are at stake a greater degree of specificity and clarity of purpose is essential.' " (quoting O'Day, 109 Wash.2d at 810, 749 P.2d 142 ) );
*810 Citizens United v. Fed. Election Comm'n, 558 U.S. 310, 366, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010) (treating disclosure requirements as burdens on the First Amendment). "Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity." Nat'l Ass'n for Advancement of Colored People v. Button, 371 U.S. 415, 433, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963) (citing Cantwell v. Connecticut, 310 U.S. 296, 311, 60 S.Ct. 900, 84 L.Ed. 1213 (1940) ). "If the line drawn ... is an ambiguous one, [the court] will not presume" that the statute is constitutional. Id. at 432, 83 S.Ct. 328. Rather, an ambiguous statute bearing on such an important right must not be given effect. Id.
¶ 57 The majority states that the Foundation has the burden of proving that former RCW 42.17A.005(4) is unconstitutionally vague. Majority at 812-13, 813. The Court of Appeals took the same position in the unpublished portion of its opinion. Evergreen Freedom Found., No. 50224-1-II, slip op. (unpublished portion) at 23, http://www.courts.wa.gov/opinions/pdf/D2%2050224-l-II%20Published%20Opinion.pdf. Like the Court of Appeals, the majority cites Voters Education Committee in support of its position. But Voters Education Committee says just the opposite. 161 Wash.2d at 481-82, 166 P.3d 1174. The court in that case did recognize that a statute is ordinarily presumed constitutional. But it also noted that that presumption is not extended to statutes regulating speech. Id. at 482, 166 P.3d 1174. That case, like this case, involved a constitutional vagueness challenge to the FCPA, and because the FCPA regulates speech, we placed the burden of demonstrating the statute's clarity on the State. Id. Thus, to the extent that a burden exists in this case, Voters Education Committee indicates that the State must bear it.
*820 CONCLUSION
¶ 58 Because former RCW 42.17A.005(4) is ambiguous as applied to the circumstances of this case, the statute cannot *811 be given effect in these circumstances. It is unconstitutionally vague as applied.[6]
¶ 59 I respectfully dissent.
Johnson, J.
González, J.
Stephens, J.

Under RCW 29A.04.091, a " '[m]easure' includes any proposition or question submitted to the voters."

See Sequim Municipal Code 1.16.010 (identifying Sequim as a code city); Shelton Municipal Code 1.24.010 (identifying Shelton as a code city); Chelan Municipal Code 1.08.010 (identifying Chelan as a code city).

I assume for the purposes of this opinion that the Foundation's provision of free legal representation to the citizens trying to place the initiatives on their local ballots qualifies as "independent expenditures" under RCW 42.17A.255(1). The majority makes the same assumption. As the Court of Appeals noted, the Foundation has not argued otherwise. Evergreen Freedom Found., 1 Wash. App. 2d at 306 n.5, 404 P.3d 618.

The legislature amended the definition of "ballot proposition" again in 2005 and 2010. But those amendments made technical, nonsubstantive changes only. Laws of 2005, ch. 445, § 6; Laws of , ch. 204, § 101.

RCW 42.17A.005 has been amended 20 times since voters enacted it in 1972.

Recognizing that former RCW 42.17A.005(4) is unconstitutionally vague as applied to the circumstances of this case does not conflict with the holdings of our previous cases addressing the FCPA. See Utter, 182 Wash.2d 398, 341 P.3d 953 ; Voters Educ. Comm., 161 Wash.2d 470, 166 P.3d 1174. Nor does it conflict with the Ninth Circuit's holdings in Brumsickle, 624 F.3d 990. The questions in those cases, as well as their underlying facts, were all very different than the ones before the court today. The circumstances of this case-initiatives not yet on the ballot in noncharter cities-stand on their own, and the challenge-to former RCW 42.17A.005(4) in the aforementioned circumstances-is narrow.