[No. 36995-4-I. Division One. June 2, 1997.]

THE CITY OF SEATTLE, *Respondent*, v. SARAH McCONAHY, *Petitioner*.

THE CITY OF SEATTLE, *Respondent,* v. JOHN HOFF, *Petitioner.*

---

[22]RCW 2.06.040.

*Jeannie Gorman, John P. Sheridan, Stephen K. Festor,* and *Sheridan & Associates, P.S.,* for petitioners.

*Mark H. Sidran, City Attorney,* and *Thomas S. Sheehan* and *Sandra L. Cohen, Assistants,* for respondent.

*George N. Prince* and *Nancy L. Talner* on behalf of American Civil Liberties Union, amicus curiae.

AGID, J. — Sarah McConahy, a formerly homeless youth, and John Hoff, an advocate for Seattle's homeless, were cited under the "Seattle sitting ordinance," SMC 15.48.040, for sitting on the sidewalk in the University District. They challenge the ordinance on several state constitutional grounds.[1] These include alleging that the ordinance violates their substantive due process and free expression rights under the Washington State Constitution and that it violates Washington's Privileges and Immunities Clause. McConahy also contends that the ordinance violates her right to travel, and Hoff argues that the officers violated Washington's ban on discrimination against persons with disabilities when they cited him.

■ While we decline to invalidate the ordinance in this case, we wish to make clear what we are not deciding. First, we express no opinion about whether the ordinance is or is not good social policy. We hold only that the ordinance is constitutionally-valid legislation. SMC 15.48.040 is quintessential legislative policy making, and we will not disturb the policy decisions made by legislative bodies unless they are unconstitutional or conflict with state law. We also hold that the City did not violate appellants' right to free expression because Hoff and McConahy were not involved in expressive activity when they were cited. But we do not decide whether, on different facts involving a protected activity or speech, SMC 15.48.040 would be a valid time, place, manner restriction. We also do not decide whether homeless residents could establish the requisite disparate impact to invoke the

---

[1] After the City approved the ordinance, a class challenged it in federal court. The federal district court rejected their facial challenge to the ordinance on various federal constitutional and statutory grounds. *Roulette v. City of Seattle*, 850 F. Supp. 1442 (W.D. Wash. 1994). The Ninth Circuit denied appeal. *Roulette v. City of Seattle*, 97 F.3d 300 (9th Cir. 1996). McConahy and Hoff were both members of the class, but were cited after the federal court issued its order and now challenge the ordinance as applied to them.

protection of the Privileges and Immunities Clause because these appellants have not done so.

## FACTS

In response to complaints about increasing petty crime, declining shoppers in core retail areas, and problems with pedestrians being blocked by people sitting or lying on sidewalks, the Seattle City Council enacted SMC 15.48.040. Under that ordinance, it is a civil infraction for any person to sit or lie on the sidewalk in downtown Seattle and other neighborhood commercial zones between 7 a.m. and 9 p.m. except in an emergency, or if he or she is in a wheelchair or on a bench or in a bus zone or patronizing a commercial establishment or attending a permitted event.[2]

McConahy was cited while sitting on a street bulb with a group of friends, eating pizza, watching her friends play chess for change, and sometimes panhandling. Police officers approached the group and informed them that they were violating the ordinance. Her friends stood, but McConahy remained seated protesting the ordinance. McConahy wore an army jacket decorated with an American flag and a slogan that said, "Fuck your American dream." She also wore a button that said, "Sitting is not a crime." Hoff was cited while sitting reading a book and leaning against a building with leaflets advertising a protest against the ordinance in his lap. They had separate trials in municipal court. The Hoff court heard testimony and allowed extensive argument on his constitutional claims, and the McConahy court accepted much of this record. Both courts found that the defendants violated the ordinance and rejected their free expression and substantive due process claims. The two cases were joined for appeal.

---

[2]The full text of the ordinance is reprinted in Appendix A.

## DISCUSSION

A. Substantive Due Process

Hoff and McConahy first contend that the sitting ordinance violates their substantive due process rights under the Washington State Constitution. They argue that it violates art. I, § 1, because it is an unreasonable exercise of police power which infringes upon their individual liberties. They also argue that the state constitution, read as a whole, is more protective of individual liberties than the federal constitution and that the ordinance is invalid under our Personal Rights Clause, art. I, § 3.

■■ Article I, § 1 states that "[a]ll political power is inherent in the people, and governments derive their just powers from the consent of the governed, and are established to protect and maintain individual rights." Hoff and McConahy contend that this section prohibits governments from enacting legislation which detracts from individual liberties. They argue that this section embodies the fundamental predicate underlying the Washington Constitution protecting individual liberties, and the Seattle ordinance violates it. But they cite no authority for the proposition that art. I, § 1 is not coequal with art. XI, § 11 of that same constitution which expressly permits "[a]ny county, city, town or township [to] make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws." We must interpret the constitution as a whole so that no provision is ignored or meaningless. *Washington Econ. Dev. Fin. Auth. v. Grimm*, 119 Wn.2d 738, 746, 837 P.2d 606 (1992). Reading the two sections together, art. XI, § 11 grants local governments the police power to enact legislation to protect the health, safety, and welfare of the citizens, while art. I, § 1 acts as a check on that power by requiring that the legislation be reasonable and not infringe unduly on individual rights. *State v. Crediford*, 130 Wn.2d 747, 752, 927 P.2d 1129 (1996); *Second Amendment Found. v. City of Renton*, 35 Wn. App. 583, 586, 668 P.2d 596 (1983).

 The Seattle City Council enacted the ordinance based on its findings that people sitting on the sidewalk presented a health and safety concern because many citizens had trouble maneuvering around them and shoppers were deterred from coming into core areas because petty crime and blight were increasing. The record supports these findings, and we must therefore accept them. We are bound to construe the ordinance as constitutional if we can do so without doing violence to important rights. *See Duckworth v. City of Bonney Lake*, 91 Wn.2d 19, 26-27, 586 P.2d 860 (1978). The ordinance was enacted in response to a legitimate legislative health and safety concern. Article XI, § 11 permits a municipality to enact such an ordinance. *Baker v. Snohomish County Dep't of Planning & Community Dev.*, 68 Wn. App. 581, 585, 841 P.2d 1321 (1992), *review denied*, 121 Wn.2d 1027 (1993). McConahy and Hoff have not shown that the limits the ordinance imposes are unreasonable under art. I, § 1.

They also argue that the ordinance violates their fundamental right to "move about or stand still." We agree with appellants that the Washington and federal constitutions prohibit legislation that unreasonably interferes with the individual's right to be let alone while engaged in innocent activity. *See Papachristou v. City of Jacksonville*, 405 U.S. 156, 92 S. Ct. 839, 31 L. Ed. 2d 110 (1972); *City of Seattle v. Drew*, 70 Wn.2d 405, 423 P.2d 522, 25 A.L.R.3d 827 (1967). However, Seattle's sidewalk sitting ordinance is not an unreasonable or arbitrary intrusion into that right. Rather, it is narrowly-tailored to permit appellants to exercise this right at other times and in other places than those covered by the ordinance.

Appellants argue that because the Washington Constitution provides greater protection to individual rights than does the federal constitution, we should apply a correspondingly more protective analysis when considering legislation which impacts these liberties. They suggest we adopt an analysis similar to the one the Ninth Circuit recently considered in *Compassion in Dying v. Washington*,

79 F.3d 790 (9th Cir. 1996). The court there adopted a continuum approach which it posited is more consistent with the decisions of the United States Supreme Court. *Compassion in Dying*, 79 F.3d at 804. Under its formulation, a court considers the following factors when confronted with a substantive due process problem: (1) the State's interests; (2) the manner in which those interests are furthered by the law; (3) the importance of the liberty interest by itself and the context in which it is being exercised; (4) the extent that the interest is burdened by the law; and (5) the consequences of upholding or overturning the law. *Compassion in Dying*, 79 F.3d at 816.

We disagree with appellants' position that we must apply a more protective approach under the state constitution. Because the text of our provision is so similar to the federal one, our Supreme Court has held that they are to be interpreted the same way. *State v. Ortiz*, 119 Wn.2d 294, 304, 831 P.2d 1060 (1992). But we will consider the *Compassion in Dying* test because our courts look to federal analysis in interpreting art. I, § 3. *Ortiz*, 119 Wn.2d at 302-03; *Petstel, Inc. v. King County*, 77 Wn.2d 144, 459 P.2d 937 (1969). The *Compassion in Dying* test does not conflict with previous Washington substantive due process law. Rather, it contributes a useful approach to due process analysis because it creates a more workable balance among the competing interests presented in cases like this one than does the traditional balancing test. We agree with the Ninth Circuit that its approach is more comprehensive and helpful in resolving complicated questions about the balance of the State's police power against individual rights. Even under that test, however, we conclude that the ordinance is a valid legislative enactment and does not unreasonably interfere with individual liberties.

First, Seattle has a valid interest in promoting pedestrian safety and economic vitality and in reducing petty crime. Prohibiting people from sitting on the sidewalks during busy work and shopping hours makes Seattle's core retail areas safer for pedestrians. It also helps make

these areas more hospitable to shoppers and residents, thus opening the way to economic revitalization. Second, Hoff and McConahy argue that, despite the City's valid interests, their interest in being left alone while they are engaged in essentially innocent activity outweighs those the ordinance is designed to protect. While we agree that their interest is rooted in the right to be left alone, this legislation is carefully tailored to infringe only slightly on that right. It prohibits sitting on the sidewalk but it in no way limits anyone's right to be in the core areas. There are benches and parks in all the regulated areas on which appellants are free to sit at any time.

Third, Hoff and McConahy argue that the ordinance does not appreciably further the City's interests because it could have relied upon the pedestrian interference ordinance[3] to address the problems associated with people sitting on the sidewalk. But the constitution does not require the City to do so. It is constitutionally permissible for the City to adopt an incremental approach to clearing the sidewalks for shoppers and pedestrians by enforcing a civil ordinance rather than making each violation a criminal offense under the pedestrian interference ordinance. So long as the City does not unreasonably limit Hoff's and McConahy's right to freedom of movement, it may legally choose to reserve its criminal prosecution resources for more serious violations of the law.

In summary, the City's ordinance furthers a legitimate police power interest in a manner that infringes only minimally on appellants' concededly important freedom of movement. This ordinance is limited in scope, and alternative places to sit and rest are available. Were we to invalidate the ordinance, we would deprive the City of a rather benign tool for achieving its legitimate objectives. While the consequences of overturning the law are not catastrophic to the City's interest, even under the *Compassion in Dying* analysis, we cannot say that it violates Hoff's and McConahy's substantive due process rights. SMC

---

[3] SMC 12A.12.015.

15.48.040 does not violate art. I, § 3 of the Washington State Constitution; rather, it is a reasonable legislative response to a local safety and welfare problem.

## B. Freedom of Expression

■■ ■■ Hoff and McConahy next contend that the ordinance impermissibly burdens their right to free expression under art. I, § 5 of the Washington State Constitution. Mere conduct is not expressive, and legislation may restrict it. But if the conduct is expressive and central to the actor's message, a law restricting that conduct is subject to a free expression challenge. *O'Day v. King County*, 109 Wn.2d 796, 803, 749 P.2d 142 (1988). Conduct is expressive when the actor intends to communicate a particular message by his actions and that message will be understood by those who observe it because of the surrounding circumstances. *Spence v. Washington*, 418 U.S. 405, 410-11, 94 S. Ct. 2727, 41 L. Ed. 2d 842 (1974). Both trial courts found that Hoff and McConahy were engaged in pure conduct when they were cited. We agree that sitting is pure conduct which had no expressive value in these cases.

■■ Hoff argues that he was engaged in expressive conduct because he was handing out leaflets announcing a protest against the ordinance. The trial court found otherwise. It acknowledged that he had leaflets in his lap but found that he was not trying to distribute them. Rather, he was leaning against a building reading a book. We will not disturb a trial court's factual findings on appeal when they are supported by substantial evidence. *Bering v. Share*, 106 Wn.2d 212, 220, 721 P.2d 918 (1986), *cert. denied*, 479 U.S. 1050 (1987). There is ample evidence in the record to support the trial court's findings, and we agree that reading a book with a lap full of leaflets is not expressive conduct. Similarly, the trial court found that McConahy was not engaged in expressive conduct but was sitting with her friends eating pizza. Even though she was wearing a jacket adorned with political slogans, including

a button protesting the sitting ordinance, she was not engaged in a protest or expressing a message that would be understood by passersby. The court also found that she was not panhandling when she was cited. The record in McConahy's case also supports the court's findings, and we will not disturb them.

 ██ Even if the record supported a finding that Hoff or McConahy were engaged in expressive conduct when cited, sitting was not essential to either's message. Hoff argues that sitting was essential to his protest against the sitting ordinance and that he could more effectively leaflet from a supplicant position. We disagree with both assertions. He could have effectively informed the public of his view that the ordinance was unjust while standing. Violating an ordinance in an attempt to protest against it is not protected expressive conduct. *See Cox v. Louisiana*, 379 U.S. 536, 554-55, 85 S. Ct. 453, 13 L. Ed. 2d 471 (1965). Nor is leafleting necessarily more successful when seated. Hoff would have been more visible and able to make eye contact had he been standing.

We also disagree that sitting was central to McConahy's message. She argues that sitting is central to begging. In *Berkeley Community Health Project v. City of Berkeley*, 902 F. Supp. 1084, 1092 (N.D. Cal. 1995), the court held that begging was expressive and protected by the California free speech clause. It also concluded that sitting on the sidewalk, even in violation of the city ordinance prohibiting it, was central to that expression because it was a sign of subservience and need. While we agree that begging is protected speech, we do not agree that sitting is essential to expressing subservience or need. Even if McConahy had been begging when cited, common experience demonstrates that she could have done so effectively without violating the ordinance. Because neither Hoff nor McConahy was engaged in expressive conduct, we need not decide whether SMC 15.48.040 is a reasonable time, place, manner restriction on speech.

 ██ Hoff and McConahy argue that the ordinance is

unconstitutionally overbroad because it restricts more expression than needed to achieve its legislative purpose. A statute is overbroad if it sweeps within its proscriptions conduct that is protected and does not need to be restricted to achieve its purpose. *O'Day*, 109 Wn.2d at 803. Under Washington law, an ordinance is invalid if it includes within its proscriptions protected expression, regardless of whether that overbreadth is substantial, as is required by First Amendment jurisprudence. *O'Day*, 109 Wn.2d at 804. However, even under the broader protection of the Washington Constitution, Seattle's ordinance is not over-broad because sitting does not have inherent expressive value. We can think of few instances where sitting is necessary or central to protected expression, and Hoff and McConahy have suggested none that is persuasive. Therefore, Seattle's ban on sidewalk sitting is not over-broad.

## C. Privileges and Immunities

■ Hoff's and McConahy's next contention is that the ordinance disparately impacts poor or homeless and violates the state Privileges and Immunities Clause.[4] They argue that the ordinance disproportionately affects the homeless and poor because they cannot afford to patronize commercial establishments or have a home to go to and are therefore more likely to have to sit on the sidewalk. Appellants assert that the Washington Privileges and Immunities Clause grants greater protection than does the federal Equal Protection Clause. In the past, the Supreme Court has clearly held that the state and federal clauses are substantially alike and subject to the same interpretation. *American Network, Inc. v. Washington Utils. & Transp. Comm'n*, 113 Wn.2d 59, 776 P.2d 950 (1989). More recently, the court recognized that we examine gender discrimination allegations under the strict scrutiny test,

---

[4]"No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations." WASH. CONST. art. I, § 12.

and it questioned whether our constitution provides greater protection than the federal Equal Protection Clause but did not resolve the issue. *Griffin v. Eller*, 130 Wn.2d 58, 64-65, 922 P.2d 788 (1996). While art. I, § 12 may subject disparate treatment on the basis of economic status to greater scrutiny than its federal counterpart, we do not resolve that issue here because appellants have not established with testimony or other competent evidence that the ordinance has the requisite disparate effect.[5]

■ Because the record does not support a finding of disparate impact on a protected group, we apply minimum constitutional scrutiny. *American Network*, 113 Wn.2d at 78. Under that test, the classification must: (1) apply to all members of the class in the same way; (2) be based on a reasonable distinction between members inside and outside the class; and (3) be rationally related to the purpose of the legislation. *American Network*, 113 Wn.2d at 78. SMC 15.48.040 meets each of these criteria. The classes the ordinance creates are those who are and are not patronizing commercial establishments or attending organized events. It applies to all members of each class in the same way, and the distinction it draws is a rational one. The City Council could properly conclude that people patronizing commercial establishments or attending events are more easily seen and avoided by pedestrians, less likely to engage in petty crime, and more likely to contribute to the local economy. These distinctions are

---

[5]McConahy argues that she attempted to make this showing, but the trial court improperly denied her discovery request for photographs of persons cited under the ordinance, testimony regarding the City's motives for passing the ordinance, and demographics of Seattle's homeless. The court denied the discovery requests because they were too time consuming, expensive, and were inconsistent with the purpose of the civil infraction rules, to "secure the just, speedy, and inexpensive determination of every infraction case." IRLJ 1.1(b).

Decisions on discovery requests is within the discretion of the trial court and will not be disturbed on appeal unless manifestly unreasonable or based on untenable reasons. *Doe v. Puget Sound Blood Ctr.*, 117 Wn.2d 772, 777, 819 P.2d 370 (1991). We recognize that appellants cannot establish a disparate impact without this discovery. However, in the context of McConahy's case, a challenge to a single citation under the ordinance, the cost and time involved in producing the discovery was overly burdensome. The trial court did not abuse its discretion in denying the request.

directly related to the ordinance's legislative purposes: namely, pedestrian safety, reduction of petty crime, and urban revitalization. While we recognize that these distinctions are related to wealth—or the lack of it— where, as here, appellants have not established that the ordinance in fact has a disparate impact on the poor or homeless, it does not violate our Privileges and Immunities Clause.

D. Right to Travel

■■ ■■ McConahy's final contention is that the ordinance impermissibly restricts her right to travel. The right to travel, including the right to travel within a state, is a fundamental right subject to strict scrutiny under the United States Constitution. *Kent v. Dulles*, 357 U.S. 116, 78 S. Ct. 1113, 2 L. Ed. 2d 1204 (1958). A law violates the right to travel if it penalizes migration from state to state, or makes it impossible to move about within a state. *Memorial Hosp. v. Maricopa County*, 415 U.S. 250, 259, 94 S. Ct. 1076, 39 L. Ed. 2d 306 (1974).

McConahy argues that because she was homeless, she had to travel long distances around Seattle to access food, shelter, and other social services. During these journeys she often needed to rest on the sidewalk when no bench or park was available. Traditionally, a violation of the right to travel arises from residency requirements, waiting periods, or additional fees for new state residents to receive basic services. *See Memorial Hosp.*, 415 U.S. at 259; *Shapiro v. Thompson*, 394 U.S. 618, 89 S. Ct. 1322, 22 L. Ed. 2d 600 (1969); *Eggert v. City of Seattle*, 81 Wn.2d 840, 505 P.2d 801 (1973). Sweeping ordinances prohibiting eating, sleeping, sitting, or lying down in public may also be so broad that they violate the right to travel if they make it impossible for homeless persons to live within the city. *See Pottinger v. City of Miami*, 810 F. Supp. 1551 (S.D. Fla. 1992).

But Seattle's sitting ordinance does not implicate the right to travel. Unlike the ordinance in *Pottinger*, it does

not exact a penalty for moving within the state or prohibit homeless persons from living on the streets of Seattle. Nor does it make it more difficult for people to migrate from state to state. Instead, the ordinance restricts sitting or lying down during certain hours in some places to benches or parks which are out of pedestrian traffic and not in the path to retail areas. McConahy may still travel around Seattle to access services and rest on benches or in parks.

E. RCW 49.60.030

Hoff finally contends that the officers violated RCW 49.60.030, Washington's ban on discrimination against persons with disabilities, when they cited him for sitting. He claims that he has a disability that requires him to sit and rest periodically and often must sit on the sidewalk where there is no bench or park. SMC 15.48.040 exempts persons using wheelchairs or having a medical emergency. Hoff counters that his disability is not so severe that he must use a wheelchair or that it qualifies as a medical emergency, but that it nonetheless requires him to sit.

■■ To prevail in his claim, Hoff must show both that his disability exists and that the City discriminated against him because of that disability. *Doe v. Boeing Co.*, 121 Wn.2d 8, 13, 846 P.2d 531 (1993). Whether a handicap exists and is the basis of discrimination are questions of fact for the trial court, *Doe*, 121 Wn.2d at 15-16, which we review only to determine whether they are supported by substantial evidence. While Hoff did testify that his injury requires him to sit and rest, several officers also testified that he walked to the store for a soda and that he was able to get up and approach the police officers numerous times. Further, there is no evidence that the City ticketed him because he had a disability. Rather, there is ample evidence that officers ticketed him because he persisted in sitting on the sidewalk after they warned him that he was violating the ordinance. Hoff cannot establish a violation of RCW 49.60.030.

Affirmed.

BAKER, C.J., and BECKER, J., concur.

## APPENDIX A

**SMC 15.48.040 Sitting or lying down on public sidewalks in downtown and neighborhood commercial zones.**

A. Prohibition. No person shall sit or lie down upon a public sidewalk, or upon a blanket, chair, stool, or any other object placed upon a public sidewalk, during the hours between seven a.m. (7:00 a.m.) and nine p.m. (9:00 p.m.) in the following zones:

1. The Downtown Zone, defined as the area bounded by the Puget Sound waterfront on the west, South Jackson Street on the south, Interstate 5 on the East, and Denny Way and Broad Street on the North;

2. Neighborhood Commercial Zones, defined as areas zoned as Pioneer Square Mixed (PSM), International District Mixed (IDM), Commercial 1 (C1), Commercial 2 (C2), Neighborhood Commercial 1 (NC1), Neighborhood Commercial 2 (NC2), and Neighborhood Commercial 3 (NC3).

B. Exceptions. The prohibition in subsection A shall not apply to any person:

1. Sitting or lying down on a public sidewalk due to a medical emergency;

2. Who, as the result of a disability, utilizes a wheelchair, walker, or similar device to move about the public sidewalk;

3. Operating or patronizing a commercial establishment conducted on the public sidewalk pursuant to a street use permit; or a person participating in or attending a parade, festival, performance, rally, demonstration, meeting, or similar event conducted on the public sidewalk pursuant to a street use or other applicable permit;

4. Sitting on a chair or bench located on the public sidewalk which is supplied by a public agency or by the abutting private property owner;

5. Sitting on a public sidewalk within a bus stop zone while waiting for public or private transportation.

Nothing in any of these exceptions shall be construed to permit any conduct which is prohibited by SMC Section 12A.12.015, Pedestrian interference.

C. No person shall be cited under this section unless the person engages in conduct prohibited by this section after having been notified by a law enforcement officer that the conduct violates this section.

Review denied at 133 Wn.2d 1018 (1997).