[No. 49104-1-I. Division One. August 5, 2002.]

THE CITY OF SEATTLE, *Respondent*, v. MIGHTY MOVERS, INC., *Appellant*.

---

[15] *Montgomery*, 2 Haw. at 679.

*Chase C. Alvord* (of *Tousley Brain Stephens, P.L.L.C.*), for appellant.

*Thomas A. Carr, City Attorney,* and *Thomas M.A. Castagna, Assistant,* for respondent.

*Richard H. Robblee* and *Kristina M. Detwiler* on behalf of International Brotherhood of Electrical Workers, Local 77, amicus curiae.

*Allen B. Draher, Paul J. Lawrence,* and *Robert J. Dzielak* on behalf of Joint Artists & Music Promotions, amicus curiae.

APPELWICK, J. — In 1994, the City of Seattle banned the posting of temporary signs on City-owned structures. Mighty Movers, Inc., contests the constitutionality of the antiposting ordinance. The central issue on appeal is whether the trial court erred in concluding as a matter of law that posting on City-owned properties, including utility poles, is not a traditional public forum. The record below establishes that posting temporary signs on the portion of poles, within reach of pedestrians, adjacent to streets and sidewalks is a traditional public forum. The record does not establish a compelling governmental interest to ban posting on these poles. We hold that the antiposting ordinance is facially overbroad in violation article I, section 5 of the Washington Constitution. We invalidate that portion of the ordinance affecting traffic devices, utility poles, and lamp posts which are part of the traditional public forum. We therefore reverse.

## FACTS

In 1994, the City of Seattle enacted a series of ordinances including the following:

**15.48.100 Unlawful posting of signs.**

It is unlawful for anyone to affix any handbill, sign, or poster upon any traffic control device, utility pole, lamp post, City-owned structure, or City-owned tree or shrubbery in any public place, or to affix the same to a wire or appurtenance thereof, except that affixation is authorized on poster boards and kiosks that are designated for handbills and signs. The provisions of this section shall not apply to traffic, parking and other regulatory signs posted under the auspices of a public agency with the permission of the City.

City-owned structures include bridges and overpasses, monorail supports, retaining walls, fences, street furniture and shelters, among other construction.

The City designated 11 kiosks for posting throughout the City. SMC (Seattle Municipal Code) 15.48.100. Anyone who violates this ordinance is liable for the cost of removing the sign. SMC 15.48.120.

By resolution, the City cited three reasons for this ordinance: (1) the safety hazard to utility workers posed by signs attached to utility poles; (2) the public safety hazard posed by signs posted on traffic control devices; and (3) the visual blight and clutter caused by the proliferation of signs on public structures.

In violation of the ordinance, Mighty Movers posted numerous signs advertising its service on utility poles throughout the City. The City removed these signs, and on June 8, 1999, it sued Mighty Movers to recover $7,870 in removal costs. Mighty Movers counterclaimed for a declaration that the ordinances violated article I, section 5 of the Washington Constitution, Washington's free speech provision. Mighty Movers also stipulated that

> [u]nless Seattle Muncipal Code Sections 15.48.100–.130 are determined to be unconstitutional, Defendant Mighty Movers, Inc. is responsible to pay Plaintiff The City of Seattle $7,870.00 plus interest at the rate of 12% per annum, reasonable attorney's fees, and legal costs as requested in the Amended Complaint for Monies Due filed by Plaintiff The City of Seattle in this matter.

Both sides moved for summary judgment. The trial court ruled in favor of the City, finding as a matter of law that the utility poles and other City-owned structures were not a public forum. The trial court relied on the United States Supreme Court's decision in *City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 812, 104 S. Ct. 2118, 80 L. Ed. 2d 772 (1984), in holding that "utility poles are not a traditional public forum." The trial court awarded the City $2,500 in attorney fees.

Mighty Movers appealed to the Washington State Supreme Court. The Supreme Court transferred the case to this court on September 5, 2001.

ANALYSIS

I. Standard of Review

This court reviews a grant or denial of a motion for summary judgment de novo. *Wash. State Republican Party v. Pub. Disclosure Comm'n*, 141 Wn.2d 245, 254, 4 P.3d 808 (2000).

■ Mighty Movers asserts that the City of Seattle's antiposting ordinance violates the Washington Constitution. Specifically, it argues that the ordinance is facially overbroad under article I, section 5 of the Washington Constitution. In considering a facial challenge to an ordinance on free speech grounds, the facts of the particular case are not essential. *City of Seattle v. Webster*, 115 Wn.2d 635, 640, 802 P.2d 1333 (1990). "Constitutional analysis is made upon the language of the ordinance or statute itself." *Webster*, 115 Wn.2d at 640.

■ A law is overbroad if it sweeps within its prohibitions constitutionally protected free speech activities. *State v. Williams*, 144 Wn.2d 197, 206, 26 P.3d 890 (2001). Under the Washington Constitution, unlike under the federal constitution, a facial overbreadth challenge does not require a finding that the challenged ordinance reaches a "substantial" amount of constitutionally protected conduct. *O'Day v. King County*, 109 Wn.2d 796, 803-04, 749 P.2d 142 (1988). "Under Washington law, an ordinance is invalid if it includes within its proscriptions protected expression, regardless of whether that overbreadth is substantial, as is required by First Amendment jurisprudence." *City of Seattle v. McConahy*, 86 Wn. App. 557, 569, 937 P.2d 1133 (1997).

II. Public Forum Analysis

■ ■ The amount of government regulation of speech allowed by the federal and state constitutions depends, in part, on the location and the method used for communicating. The government's ability to regulate speech in a public forum is much more restricted. The test, however, for

regulating speech in a nonpublic forum is less stringent. "The Government's decision to restrict access to a nonpublic forum need only be reasonable; it need not be the most reasonable or the only reasonable limitation." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 808, 105 S. Ct. 3439, 87 L. Ed. 2d 567 (1985).

> Public forums are (1) those places which "by long tradition or by government fiat have been devoted to assembly and debate", . . . or (2) channels of communication used by the public at large for assembly and speech, used by certain speakers, or the discussion of certain topics.

*City of Seattle v. Huff*, 111 Wn.2d 923, 927, 767 P.2d 572 (1989) (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45, 103 S. Ct. 948, 74 L. Ed. 2d 794 (1983)). The first prong deals specifically with public property and contains two disjunctive categories—traditional public forums and public forums designated as such by the government. *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 678, 112 S. Ct. 2701, 120 L. Ed. 2d 541 (1992). Mighty Movers does not assert that the City of Seattle has designated any of its City-owned structures as public forums, therefore we do not address whether any such property is a public forum by government fiat.

A. A Question of Law and Fact

 The central question before us is whether posting on any of the enumerated City-owned properties or structures involves a traditional public forum. The question of whether any posting on City-owned properties in the City of Seattle is a traditional public forum is a mixed question of law and fact. When presented with a mixed question of law and fact, the factual issues can be decided as a matter of law if only one reasonable conclusion can be drawn. *Allen v. State*, 118 Wn.2d 753, 760, 826 P.2d 200 (1992). Such is the case here, and we therefore review the mixed question of law and fact de novo. *Adams v. Great Am. Ins. Cos.*, 87 Wn. App. 883, 886-87, 942 P.2d 1087 (1997) (citing Kelly Kunsch, *The Law*: Vincent *Standard of Review (State and Federal): A Primer*, 18 SEATTLE U. L. REV. 11, 28 (1994)). The

location and the use of particular pieces of property over time are factual questions. Whether the particular use combined with the location constitute a traditional public forum is a legal question.

### B. The Law: *Vincent* or *Collier*

Mighty Movers argues that the Washington State Supreme Court in *Collier v. City of Tacoma*, 121 Wn.2d 737, 854 P.2d 1046 (1993), already decided that a parking strip was a traditional public forum. Some of Mighty Movers signs were on poles within parking strips and therefore, it argues, were within that traditional public forum. Hence, the ordinance is overbroad. The City argues that we are bound by the United States Supreme Court's holding in *Vincent*, 466 U.S. at 813-15, that the various public properties covered by the Los Angeles ordinance (on which the City of Seattle's ordinance is based) are not public forums as a matter of law. Hence, the ordinance cannot be overbroad. We begin with an analysis of *Vincent*.

*Vincent* involved a Los Angeles Municipal Code ordinance which prohibited the posting of signs on City-owned structures. *Vincent*, 466 U.S. at 793. An organization supporting an election campaign produced 15- by 44-inch cardboard signs and attached them to utility poles by draping them over the horizontal crosswires, which support the poles and stapling the cardboard together at the bottom. *Vincent*, 466 U.S. at 792-93. The organization brought suit against the City for routinely removing their campaign signs. The City's stated interests in enacting the ordinance included promoting the safety of workmen who must scale the utility poles, eliminating traffic hazards, and improving the appearance of the city. *Vincent*, 466 U.S. at 794.

The United States Supreme Court upheld the ordinance. The *Vincent* Court rejected Taxpayers argument that the utility pole crosswires should be treated as a public forum. The Court, however, narrowed its holding to the specific parties and record before it. *Vincent*, 466 U.S. at 803 ("We therefore limit our analysis of the constitutionality of the ordinance to the concrete case before us.").

*Collier* is the only Washington case cited to this court that directly addresses whether a particular piece of property is used as a public forum. *Collier* involved a Tacoma ordinance that banned political signs posted in parking strips more than 60 days before or more than 7 days after an election. 121 Wn.2d at 743. The *Collier* court applied the federal forum test in its analysis of article I, section 5 of the Washington Constitution, but reached the opposite conclusion from the *Vincent* Court. It found that such signs in parking strips were a traditional public forum. The *Collier* court cites *Boos v. Barry*, 485 U.S. 312, 108 S. Ct. 1157, 99 L. Ed. 2d 333 (1988), for the proposition that "public streets and sidewalks [are] traditional public fora that 'time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.' " *Boos*, 485 U.S. at 318 (quoting *Hague v. Comm. for Indus. Org.*, 307 U.S. 496, 515, 59 S. Ct. 954, 83 L. Ed. 1423 (1939)).

The Washington Supreme Court held "[t]he parking strips in which Collier and his supporters placed his political signs lie between the 'streets and sidewalks' and thus are part of the 'traditional public forum.' " *Collier*, 121 Wn.2d at 747. We agree with the *Collier* analysis and rely on its direction in applying the forum analysis under the Washington Constitution.

C. The Facts

■ In this case, there is no dispute that Mighty Movers signs were attached to poles adjacent to or between streets and sidewalks. This is the same location addressed in the *Collier* case. In this case, there is no question the ordinance bans the posting of political speech also banned in the *Collier* case. The ordinance admittedly goes even farther to ban the posting of all speech, except that which public agencies may post with the City's permission. The factual records at the trial court level in *Vincent* and *Collier* did not establish a traditional public use of the forum being reviewed. Unlike the records in *Vincent* and *Collier*, we have

before us evidence of the traditional public use by posting in these locations.

The record contains a survey of historical photographs prepared at the City's request and produced by the City in discovery. The survey reviews a collection of photographs dating from the 1920s and concludes that posters or handbills are present on poles in approximately 11 percent of the photographs. A November 24, 1992 letter from then-Seattle City Council President George E. Benson to E. Nicholas Wilson states: "It was prior to the election of 1981 that I mounted a campaign to eliminate bill posting on utility poles. It bothered me greatly that our beautiful city was being desecrated by the posting of unsightly bills." A "Poster Removal Program Survey" was completed by the Seattle Conservation Corps on January 26, 1994. The survey contains multiple photographs from 1993 through 1994 of locations throughout the City of Seattle depicting utility poles covered in hundreds of temporary signs. Even after passing this ordinance banning signs, the City has continued its tradition of posting its own signs on these same poles. Only one factual conclusion can reasonably be drawn from this evidence: posting on some utility poles adjacent to streets and sidewalks is a decades old channel of communication in the City of Seattle sufficient to establish a traditional public forum. The record, however, is insufficient to establish whether posting on any of the other City-owned properties covered by the ordinance are also traditional public forums.

As a matter of law and fact, a traditional public forum has been established only for poles adjacent to streets and sidewalks. We therefore confine our further analysis of whether posting on these poles is nonetheless permissible.

III. Washington Time, Place and Manner Test

■ Government regulations in public forums are valid only if they are content neutral, narrowly tailored to serve a compelling government interest, and leave open ample alternative channels of communication. *Bering v. Share*, 106 Wn.2d 212, 234, 721 P.2d 918 (1986).

### A. Content Neutrality

■ The City of Seattle's antiposting ordinance is content neutral on its face and as applied.[1] Mighty Movers, however, argues that the exception in the ordinance for public agency postings creates subject-matter based speech classifications and, therefore, is not content neutral. However, in *Collier*, the court concluded that an ordinance which was viewpoint neutral but subject matter based was nonetheless content neutral for purposes of time, place, and manner review. 121 Wn.2d at 753. The same is true in this case.

### B. Compelling Government Interest

■ The legislative record sets forth several reasons why the ordinance is compelling: utility worker safety, fire safety, traffic safety and aesthetics. We analyze them in the context of the poles. SEATTLE, WA., Ordinance 90047 § 39-42 (Mar. 11, 1994).

Worker safety concerns focused on the risks to workers climbing wooden poles. Metal poles were not implicated. Postings obscured the cracks in the poles. Thick layers of paper prevented climbing spikes from anchoring into the poles. Nails used to post signs posed a risk of cuts to workers.

The City apparently was not persuaded that a single layer of signs was a compelling interest, since under an exception contained in the ordinance[2] it posts land use notices and other regulatory notices of public agencies on poles. No showing appears in the record that thick layers of accumulation or that the use of nails could not be adequately addressed by time, place, and manner regulations more narrowly drawn. No evidence compels banning post-

---

[1] The list of organizations invoiced for poster and sign removal speaks for itself on this point. A wide assortment of groups and organizations including, among others, the Seattle Police Officers Guild, First Free Methodist Church, numerous weight loss and moving companies, and music venues were all invoiced for removal costs.

[2] Because we invalidate the prohibition of posting on poles under a traditional public forum analysis, we need not further elaborate on the inappropriateness of the exception to that prohibition for regulatory postings by public agencies.

ing of all communication, rather than prohibiting nails as fasteners or prohibiting posting on top of other posting.

Second, fire safety was a concern in the record. The interest in fire safety is certainly important. Again, the ordinance apparently is not concerned with the risk of fires involving paper public agency notice postings, since they are an exception in the ordinance. This fire concern therefore appears to center on the accumulation of layers of postings. Time, place and manner restrictions on postings could clearly prohibit the postings that lead to layer upon layer of paper, without banning all posting. The restriction is not narrowly drawn to meet this compelling government interest.

Third, the City cites traffic safety as a basis for the ordinance. The *Collier* court did not reject that traffic safety could be a compelling reason to ban political signs in parking strips next to roadways. However, the record did not provide evidentiary support for such a finding. Clearly, signs could be posted in a manner which obstructs the view of traffic signs or the view of traffic itself. Such signs could pose a danger to other traffic or pedestrians. It is difficult to imagine, however, that a poster wrapped around a pole along a busy urban street could obstruct any view. It is also difficult to imagine how such a poster would be more distracting to drivers than the multitude of business signs, billboards, and flashing neon advertisements that invariably surround the poles and that are posted pursuant to City permit or City ordinance. Traffic safety may well become a compelling government interest behind regulation of signs, but the regulation must be narrowly tailored to address only actual safety risks. There is no showing before us that posting of signs on poles has any actual effect on traffic safety or that the ordinance prohibited only those signs having such an effect.

Finally, no case cited to the court has found aesthetics a compelling government interest. *Metromedia, Inc. v. City of San Diego* acknowledged aesthetics could be a substantial governmental goal. 453 U.S. 490, 507-08, 101 S.

Ct. 2882, 69 L. Ed. 2d 800 (1981). *Vincent* found aesthetics to be a significant government interest. 466 U.S. at 807. *Collier* found aesthetics a significant, but not a compelling interest. 121 Wn.2d at 758. The record before us, like that in *Collier*, does not allow us to conclude the City was "seriously and comprehensively addressing aesthetic concerns with respect to the environment." *Collier*, 121 Wn.2d at 758. The City has not met its burden of demonstrating a compelling interest based on aesthetic concerns.

C. Ample Alternative Channels of Communication

■ The City argues that there are myriad channels of communication left open by the ordinance, including, "the ability to picket, parade, hand out handbills or carry signs on public property and to post signs and handbills on automobiles and other private property with the permission of the owners." Not only are these methods of communication more time consuming, but they are also more expensive. We do not believe these are adequate alternative means of communication. Posting is " 'essential to the poorly financed causes of [the public].' " *Vincent*, 466 U.S. at 820 (Brennan, J., dissenting) (quoting *Martin v. City of Struthers*, 319 U.S. 141, 146, 63 S. Ct. 862, 87 L. Ed. 1313 (1943)).

The City also argues that under the ordinance, the kiosks provide an alternative channel to posting on other City-owned properties. One cannot say with a straight face that the City's installation of 11 kiosks is an adequate replacement in a city of this size for the multitude of poles that have been used for posting. The small number of kiosks is not ample. The City has therefore failed to demonstrate that ample alternative means of communication exist.

IV. The Ordinance is Overbroad

■ We hold that the portion of a publicly owned pole which is located on or adjacent to a street or sidewalk in the City of Seattle within the reach of pedestrians and which has traditionally been used for posting is a traditional public forum. Because none of the City's cited interests are

justified by banning all posting on this portion of publicly owned poles, the ordinance is not narrowly tailored to serve a compelling government interest. It therefore sweeps within its grasp constitutionally protected speech. We hold that the antiposting ordinance is overbroad and therefore is an unconstitutional restriction on free speech.

## V. Severability Analysis

A law is overbroad in its entirety only if there is no way to sever its unconstitutional applications. *State v. Talley*, 122 Wn.2d 192, 210, 858 P.2d 217 (1993). The ordinance bans posting on "traffic control device[s], utility pole[s] [and] lamp post[s]." SMC 15.48.100. Each of these categories includes some poles, which are part of the traditional public forum identified above. Therefore, we invalidate as unconstitutional the application of the ordinance to the pole portion of the traffic control devices, utility poles and lamp posts.[3] We can and do sever these provisions from the balance of the ordinance.

The trial court erred in granting summary judgment for the City of Seattle and in denying summary judgment for Mighty Movers.

We reverse.

GROSSE and AGID, JJ., concur.

Review granted at 148 Wn.2d 1020 (2003).

---

[3] We do not preclude the City from enacting time, place and manner restrictions which are appropriate to poles which are part of the traditional public forum we have identified. The City may also enact different restrictions, appropriate to signs on poles not part of the traditional public forum.