[No. 51127-6.   En Banc.   June 6, 1985.]

THE STATE OF WASHINGTON, *Respondent,* v. JOSE REYES, JR., *Appellant.*

*Daniel M. Arnold,* for appellant.

*C. J. Rabideau, Prosecuting Attorney,* and *David W. Corkrum, Deputy,* for respondent.

PEARSON, J.—The appellant, at the time a juvenile, engaged in a verbal altercation with a schoolteacher on school grounds. As a result, he was convicted of willfully disobeying the order of the teacher to leave school grounds (RCW 28A.87.055) and of insulting or abusing a teacher on school grounds (RCW 28A.87.010). Appellant challenges the sufficiency of the evidence for the conviction under RCW 28A.87.055, refusing to leave the school, and challenges the constitutionality of RCW 28A.87.010. We find that the evidence amply supports the conviction for refusing to leave the school grounds. We agree with appellant, however, that RCW 28A.87.010 is facially vague and overly broad and thus violative of the First Amendment. Accordingly, we reverse his conviction for insulting a teacher. Because a careful examination of the evidence is necessary for resolution of the sufficiency of evidence question, we recount the testimony in considerable detail.

On the evening of December 9, 1982, Robert Bodnar, a teacher and coach at McLoughlin Junior High School in Pasco, attended a basketball game at the school. As part of

his teaching duties, he is periodically assigned to work at extracurricular school activities. He has supervisory authority at these events, along with the other school employees in attendance. On December 9, 1982, he was at the school as an assigned staff member.

At the conclusion of the game Mr. Bodnar exited the front door of the school. He saw and heard a "commotion" across the street at a cafe. He testified that he heard someone across the street say "Let's go get him". Then he saw at least one person run from the cafe to the south end of the school grounds where a group of at least 50 students were waiting for rides home. Mr. Bodnar then saw someone in that group of people reel backwards, as if struck. He approached the crowd, but because there was a good deal of movement among the group he could not tell exactly what was occurring. He then told everyone to move off the school grounds unless they had a particular reason to remain.

Appellant and his brother remained after the majority of the group left. Both of these boys had been students at McLoughlin Junior High in previous years, but were not students there on this date. Appellant testified that he and Mr. Bodnar had once gotten into an "argument" when appellant was a student at McLoughlin.

Mr. Bodnar again ordered the Reyes boys off the school grounds. Appellant told Mr. Bodnar that he would not obey his order because Mr. Bodnar was not the principal. Appellant testified that he did not want to leave the school grounds, that Mr. Bodnar was falsely accusing him of hitting someone, and that Mr. Bodnar had similarly accused him falsely when he was a student at McLoughlin. Appellant testified that he was angry with Mr. Bodnar for these false accusations.

Mr. Bodnar then began to walk toward the school buildings, having informed appellant that he would call the police if appellant would not leave. Appellant began to move off the school grounds but stated, "You're going to remember this, man" and pointed his finger at Mr. Bodnar. Mr. Bodnar then stopped walking toward the school and

turned to ask appellant whether he was threatening him.

The altercation between appellant and Mr. Bodnar escalated at this point, with appellant becoming agitated, swinging his arms, coming toward Mr. Bodnar, and saying "What are you gonna do with it, man?" Appellant's brother placed himself between appellant and Mr. Bodnar, and repeatedly pushed appellant away from Mr. Bodnar and toward the middle of the street.

At approximately this point the vice–principal and another teacher appeared on the scene. The teacher and Mr. Bodnar testified that appellant called Mr. Bodnar a "white mother fucker" or a "mother fucker"; both testified that they believed appellant was challenging Mr. Bodnar to a fight and was threatening him. The testimony does not detail the resolution of the conflict, but appellant and his brother left shortly after the vice–principal and other teacher appeared. Mr. Bodnar filed a complaint against appellant the next day.

Appellant was subsequently convicted in the Juvenile Division of Franklin County Superior Court and ordered to pay $25 as a penalty for insulting a teacher. He was also ordered to serve a 3–month term of community supervision for refusing to leave the school grounds as ordered. This court accepted the appeal as an administrative transfer from Division Three of the Court of Appeals.

## I

### SUFFICIENCY OF EVIDENCE

RCW 28A.87.055 states, in relevant part:

(1) It shall be unlawful for any person to wilfully disobey the order of the chief administrative officer of a public school district, or of an authorized designee of any such administrator, to leave any motor vehicle, building, grounds or other property which is owned, operated or controlled by the school district if the person so ordered is under the influence of alcohol or drugs, or is committing, threatens to imminently commit or incites another to imminently commit any act which would disturb or interfere with or obstruct any lawful task, function, process or procedure of the school district or any lawful task,

function, process or procedure of any student, official, employee or invitee of the school district. *The order of a school officer or designee acting pursuant to this subsection shall be valid if the officer or designee reasonably believes a person ordered to leave is under the influence of alcohol or drugs, is committing acts, or is creating a disturbance as provided in this subsection.*

(Italics ours.) Violation of this statute is a misdemeanor.[1]

██ Where the sufficiency of evidence is challenged in a criminal case, the appellate court must decide whether any reasonable trier of fact could find the elements of the crime beyond a reasonable doubt. The evidence is to be viewed most favorably to the prosecution. *State v. Green,* 94 Wn.2d 216, 616 P.2d 628 (1980).

There is considerable evidence on the record that appellant acted willfully and disobeyed the order to leave. Appellant testified that he purposefully refused to leave upon Mr. Bodnar's order.

Additionally, there is ample evidence that Mr. Bodnar was an authorized designee of the school district. He was employed as a teacher and coach by the district; all teachers are required to perform supervisory duty at school functions when assigned by the principal. Mr. Bodnar had been so assigned on December 9, 1982.

Appellant primarily contends there was insufficient evidence that he committed or threatened any act which would disturb lawful school functions, or that he incited anybody else to do so. Appellant's argument ignores the fact that the statute permits a finding of the specified act if the school official *reasonably believes* the person ordered to leave committed or threatened the act.

The evidence shows Mr. Bodnar saw and heard a commotion across the street from the school, saw someone from the group across the street enter the school grounds, saw what he believed was a person being physically assaulted,

---

[1]Appellant has made no challenge to the constitutionality of RCW 28A.87.055; we therefore consider only the sufficiency of evidence for the conviction under that statute.

and observed a general increase of activity within the large group on the school grounds.

Such evidence shows Mr. Bodnar reasonably believed appellant, as part of the large group, was committing an act that would disturb a lawful "task, function, process or procedure" of the school district or of an employee of that district. The lawful task, function, process or procedure was the supervision of the basketball game and the dispersal of the crowd afterward. Mr. Bodnar was reasonably cautious of a large crowd of young people that appeared to be becoming agitated. As appellant continued to refuse to obey Mr. Bodnar's orders to leave, Mr. Bodnar's belief that appellant's behavior was disturbing the task at hand (dispersal of spectators from the school grounds) became even more reasonable. Viewed most favorably to the prosecution, any reasonable trier of fact could find all the elements of RCW 28A.87.055 beyond a reasonable doubt.

## II
### INSULTING OR ABUSING A TEACHER

Appellant was convicted under RCW 28A.87.010 for calling the teacher a "white mother fucker". The statute reads:

> Any person who shall insult or abuse a teacher anywhere on the school premises while such teacher is carrying out his official duties, shall be guilty of a misdemeanor, the penalty for which shall be a fine of not less than ten dollars nor more than one hundred dollars[.]

Appellant challenges the statute as violative of the First Amendment because facially vague and overly broad.

A criminal statute which affects speech must be narrowly construed by the courts in order to ensure that it prohibits only speech which is not constitutionally protected. *Gooding v. Wilson,* 405 U.S. 518, 522, 31 L. Ed. 2d 408, 92 S. Ct. 1103 (1972). Undoubtedly, RCW 28A.87.010 is a criminal statute which affects speech; it punishes the spoken word.

However, not all forms of speech are protected under the First Amendment. One such category of unprotected speech

is "fighting words". *Chaplinsky v. New Hampshire,* 315 U.S. 568, 86 L. Ed. 1031, 62 S. Ct. 766 (1942); *Cohen v. California,* 403 U.S. 15, 29 L. Ed. 2d 284, 91 S. Ct. 1780 (1971); *Lewis v. New Orleans,* 415 U.S. 130, 39 L. Ed. 2d 214, 94 S. Ct. 970 (1974). "Fighting words" are those words "which by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Chaplinsky,* at 572. The *Cohen* Court further defined fighting words as "inherently likely to provoke violent reaction." *Cohen,* at 20.

Significantly, in *Lewis* the United States Supreme Court invalidated a law similar to RCW 28A.87.010 as overly broad on its face. The statute in *Lewis* made it illegal

> wantonly to curse or revile or to use obscene or opprobrious language toward or with reference to any member of the city police while in the actual performance of his duty.

*Lewis,* at 132. The Court initially remanded the case to the state supreme court to narrow or limit the words of the statute. The state court held that the words, as written on the face of the statute, were already limited to fighting words.

The United States Supreme Court disagreed. It held that the words had a broader sweep than fighting words. Notably, the Court held that because the word "opprobrious", by definition, included words which did not tend to incite an immediate breach of peace, the statute was susceptible of application to protected speech and must be stricken as overly broad on its face.

The *Lewis* analysis applies with similar force to use of the word "insult" in RCW 28A.87.010. If RCW 28A.87.010 can logically be limited in application to fighting words, it must be sustained. Wherever possible, it is the duty of this court to construe a statute so as to uphold its constitutionality. *Anderson v. Morris,* 87 Wn.2d 706, 716, 558 P.2d 155 (1976). If the invalid reach of a law can be cured, there is no reason to proscribe the statute's application to unprotected speech. *New York v. Ferber,* 458 U.S. 747, 769 n.24,

73 L. Ed. 2d 1113, 102 S. Ct. 3348 (1982). However, the statute in the present case is not susceptible to a curative limitation.

"Insult" is defined as "an act or speech of insolence or contempt". *Webster's Third New International Dictionary* 1173 (1971). Many insults, then, cannot be categorized as "fighting words" because these insolent, contemptuous words are not inherently likely to lead to a breach of peace or a "violent reaction". Even insults which involve abusive or vulgar language are protected speech if no risk of a breach of peace results. *State v. Montgomery,* 31 Wn. App. 745, 644 P.2d 747 (1982). In *Montgomery,* a minor called police "fucking pigs". There the court held that foul language alone does not present a risk of harm or cause any breach of peace and that the First Amendment applies to an "uncouth juvenile criticizing the police in the street." *Montgomery,* at 755. *Accord, Cohen v. California, supra* ("Fuck the Draft" printed on jacket worn to courthouse is protected speech).

RCW 28A.87.010 sweeps too broadly by making insults which do not amount to fighting words criminal speech. Clearly, RCW 28A.87.010, like the statute in *Lewis,* is not amenable to the fighting words limitation because the word "insult" necessarily encompasses protected speech as well as fighting words.

Furthermore, the word "abuse", used in the statute, is equally overly broad because it includes *all* "language that condemns or vilifies". *Webster's,* at 8. Additionally, "abuse" can mean "physically harmful treatment". *Webster's,* at 8. Accordingly, we are uncertain whether "abuse" as used in RCW 28A.87.010 is intended to punish words, acts or both. Because a criminal statute must give fair notice of the conduct proscribed, RCW 28A.87.010 is also void for vagueness. *See Seattle v. Rice,* 93 Wn.2d 728, 612 P.2d 792 (1980).

We further note that because RCW 28A.87.010 is unsusceptible to a narrowing construction, appellant is not required to show that the words he used are protected

speech in order to avoid criminal punishment. It is immaterial that the words used by appellant might be punishable under a properly limited statute. *Lewis v. New Orleans, supra.* The Supreme Court has fashioned a special standing rule for First Amendment overbreadth cases:

> [W]hen statutes regulate or proscribe speech and when 'no readily apparent construction suggests itself as a vehicle for rehabilitating the statutes in a single prosecution,' . . . the transcendent value to all society of constitutionally protected expression is deemed to justify allowing 'attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity'. . . . This is deemed necessary because persons whose expression is constitutionally protected may well refrain from exercising their rights for fear of criminal sanctions provided by a statute susceptible of application to protected expression.

*Lewis v. New Orleans,* 415 U.S. at 133–34 (quoting *Gooding v. Wilson, supra*).

Lastly, we hold that RCW 28A.87.010 is violative of article 1, section 5 of the Washington Constitution which states that "Every person may freely speak, write and publish on all subjects, being responsible for the abuse of that right."

Freedom of speech is a preferred right under the Washington Constitution. *State v. Coe,* 101 Wn.2d 364, 679 P.2d 353 (1984). Furthermore, restraint imposed upon a constitutionally protected medium of expression is presumptively unconstitutional. *Fine Arts Guild, Inc. v. Seattle,* 74 Wn.2d 503, 506, 445 P.2d 602 (1968).

Moreover, the state constitution, like the federal constitution, does not tolerate an overly broad statute which sweeps within its proscriptions all forms of abusive, contemptuous, or insolent words.

In conclusion, we emphasize that our holding today in no way undermines the authority of school officials to prevent and to discipline conduct or speech which is *disruptive* to the school's valid functions. Certainly a school may regulate

speech which is disruptive of school work and discipline. *Tinker v. Des Moines Indep. Comm'ty Sch. Dist.,* 393 U.S. 503, 21 L. Ed. 2d 731, 89 S. Ct. 733 (1969); *Fraser v. Bethel Sch. Dist. 403,* 755 F.2d 1356 (9th Cir. 1985). RCW 28A.87-.010, however, goes far beyond prohibiting language or behavior which is substantially disruptive to the school process. It bans *all* insults by *any* person, whether these insults tend to disrupt school discipline or not.

RCW 28A.87.010 is invalidated, and appellant's conviction thereunder is reversed. The conviction under RCW 28A.87.055 is sustained.

DOLLIVER, C.J., and UTTER, BRACHTENBACH, DORE, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.