FILED

NOVEMBER 15, 2016

In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Adoption of | ) | |
| | ) | No. 33260-8-III |
| C.W.S., C.L.S., and G.D.S., | ) | |
| | ) | |
| | ) | UNPUBLISHED OPINION |
| | ) | |
| | ) | |

FEARING, C.J. — Rachel Smith appeals the termination of her parental rights

pursuant to Washington adoption statutes.  She claims that use of the adoption statutes in

Title 26 RCW to terminate her rights violated her equal protection rights because the

adoption statutes do not require proof that the State offered necessary services to her,

whereas the parental termination statutes found in Title 13 RCW demand such proof.  We

reject her argument and affirm the termination of Rachel's parental rights.

FACTS

This adoption and termination proceeding concerns the natural children of Donald

and Rachel Smith, who were married on January 6, 2001.  The couple bore three

children, Casey, Cathy and Gregory. All names are fictitious. Casey and Cathy are twins born October 11, 2001, and Gregory was born November 28, 2005.

In 2001, after the twins' birth, Rachel Smith began abusing prescription pain medication. In 2004, she substituted alcohol for pain medication. Rachel worked as a paramedic for a fire department, but, in May 2007, she stole pain medication from her employer and faced criminal charges for possession of a controlled substance. Rachel and Donald Smith separated in May 2007 and divorced in April 2008.

Upon Rachel and Donald Smith's separation, the children remained in the primary care of their father. Under an agreed final parenting plan entered in September 2007, Rachel garnered supervised visits with the three children at her parents' home. She agreed to supervision because she did not trust herself to remain sober in front of the children. Rachel thereafter never requested unsupervised visits.

On unidentified dates, Rachel Smith appeared at events for the children while intoxicated, including the twins' kindergarten graduation, their 9th or 10th birthday party, and their sporting events. At one of Casey's baseball games, Rachel suffered an alcohol withdrawal seizure resulting in cancellation of the game. She attended a roller skating birthday party for Gregory highly intoxicated and assaulted a bystander.

On April 1, 2014, Rachel Smith ceased physical contact with the children. Rachel's contact with the children was thereafter restricted to one telephone call each week, and Rachel's parents monitored the calls. Rachel missed two of four phone calls in

2

October 2014, four of four phone calls in November 2014, two of four phone calls in December 2014, and two of four phone calls in January 2015.

Rachel Smith has visited emergency rooms at Spokane hospitals hundreds of times, including eighty-six visits in 2012. Care providers diagnosed her with alcohol induced mood disorder, posttraumatic stress disorder, alcohol dependence, and borderline personality disorder. Rachel attempted suicide seven times.

Rachel Smith completed seven inpatient alcohol treatment programs and additional outpatient programs. Lake Chelan Community Hospital admitted her in November 2014 for inpatient treatment, but she failed to complete the program. The discharge note from the treatment noted her prognosis for continued sobriety was poor as evidenced by the severity and complexity of her psychiatric disorders. Rachel voluntarily and involuntarily entered psychiatric hospitals on several occasions. Rachel suffered incarceration for acts of violence toward law enforcement officers and medical providers.

Donald and June Smith met in January 2012 and married on August 17, 2013. June engages in all aspects of the three children's lives and dutifully cares for them.

## PROCEDURE

On August 20, 2013, June Smith petitioned for termination of Rachel Smith's parental rights to Casey, Cathy, and Gregory. June sought to terminate Rachel's parental rights so that June could adopt the children. Rachel contested the termination. The

3

superior court appointed Heather Lund as guardian ad litem for each child. Lund

completed an investigation and recommended that the court terminate Rachel's rights.

On February 2 and 3, 2015, the trial court conducted a trial, during which June

Smith, Donald Smith, Rachel Smith, Rachel Smith's parents, and Heather Lund testified.

Rachel did not argue before the superior court that the adoption scheme allowing

termination of parental rights violated the equal protection clause of either the federal or

state constitution.

On March 6, 2015, the trial court ordered the termination of Rachel's parental

rights. The order included the following findings:

> There is clear, cogent, and convincing evidence that [Rachel] is
> currently unfit to parent her children.
>
> . . . .
>
> 19. The Petitioner established by clear, cogent, and convincing
> evidence that [Rachel] has failed to perform duties under circumstances
> showing a substantial lack of regard for her parental obligations.
>
> 20. The Petitioner established by clear, cogent, and convincing
> evidence that [Rachel] has failed to perform the minimum parenting duties
> as described in In re H. J. P., 114 Wn.2d 522, 531-532, 789 P.2d 96 (1990).
>
> 21. The Petitioner established by clear, cogent, and convincing
> evidence that [Rachel] has failed to express love and affection for the
> children. . . .
>
> 22. The Petitioner established by clear, cogent, and convincing
> evidence that [Rachel] has failed to express personal concern over the
> health, education, and general well-being of the children. . . .
>
> . . . .
>
> 24. Petitioner established by clear, cogent, and convincing evidence
> that [Rachel] failed to provide an adequate domicile for the minor children . . .
>
> . . . .
>
> 31. Based on the foregoing, Petitioner established by clear, cogent
> and convincing evidence that [Rachel] is withholding her consent to the

4

adoption of the minor children by Petitioner [] contrary to the best interest of the children.

32. Based on the foregoing, Petitioner established by clear, cogent, and convincing evidence that termination of [Rachel's] parental rights is in the children's best interest.

Clerk's Papers (CP) at 373-76.

On March 26, 2015, Rachel Smith appealed the termination order by filing a notice of appeal. On March 27, 2015, June petitioned to adopt Casey, Cathy, and Gregory. The trial court approved the adoption and filed a decree of adoption for each of the children.

## LAW AND ANALYSIS

On appeal, Rachel Smith contends that the trial court's order to terminate her parental rights violates the equal protection clauses of the United States and Washington Constitutions because the rules governing termination of her right to parent her children under the adoption code differs from those applied to similarly situated parents whose rights are terminated under the dependency code. She emphasizes that termination under the dependency statutes requires the State to have provided remedial services to correct parental deficiencies, but the adoption process does not require the State to offer any services prior to the court's order of termination.

June Smith responds on the merits that equal protection does not benefit Rachel Smith because Rachel is not similarly situated to parents whose rights are taken by the State through the parental termination statutes. June also raises three obstacles to

5

Rachel's appeal: (1) this court lacks jurisdiction because Rachel failed to timely appeal the adoption order, (2) Rachel needed to and failed to notify the attorney general before challenging the constitutionality of the adoption statute, and (3) RAP 2.5(a) prevents Rachel from raising equal protection for the first time on appeal.

*Issue 1: Whether Rachel Smith needed to appeal the adoption decree?*

*Answer 1: No.*

On March 26, 2015, Rachel Smith filed a notice of appeal of the March 6, 2015, order terminating parental rights. Nevertheless, she filed no notice of appeal of the March 27, 2015, adoption decree. June Smith contends this court lacks jurisdiction over the appeal because Rachel failed to challenge the trial court's final order, the adoption decree. The validity of the adoption order entered after this appeal is not before us.

We disagree with June Smith. RAP 2.2(a)(6) expressly allows for review of an order terminating all parental rights. No court rule qualifies RAP 2.2(a)(6) by demanding that the appellant file an additional appeal notice after a later order. RCW 26.33.130(4) implies that the parent may file a notice of appeal of the termination order before any order of adoption and that no challenge to the adoption is necessary to proceed with the appeal of the termination. The statutory subsection reads:

> (4) The parent or alleged father whose parent-child relationship with the child has been terminated is not thereafter entitled to notice of proceedings for the adoption of the child by another, nor has the parent or alleged father any right to contest the adoption or otherwise to participate in

6

the proceedings *unless an appeal from the termination order is pending* or unless otherwise ordered by the court.

RCW 26.33.130 (emphasis added).

In *State ex rel. T.W. v. Ohmer*, 133 S.W.3d 41 (Mo. 2004), the natural mother appealed an order of termination of her parental rights, after which order the trial court entered an order of adoption favoring the foster parents. The mother did not appeal the order of adoption but sought the extraordinary remedy of a writ of prohibition directing the trial court to vacate the order of adoption while the appeal of the termination order remained pending. The Supreme Court of Missouri granted the writ. *Roberto F. v. Department of Child Safety*, 237 Ariz. 440, 352 P.3d 909 (2015) also impliedly recognizes that a parent may appeal a termination order without appealing a later adoption order. In both decisions, the reviewing court proceeded with a review of the termination order regardless of an adoption order.

Rachel Smith timely filed the notice of appeal within thirty days of the termination order. RAP 5.2(a). We will address her appeal.

*Issue 2: Must Rachel Smith have served the Washington attorney general with notice of this appeal?*

*Answer 2: No.*

7

June Smith also argues that this reviewing court lacks jurisdiction because Rachel Smith failed to serve a copy of her constitutional challenge on the Washington attorney general as demanded by RCW 7.24.110. The statute confusingly declares:

> When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding. In any proceeding which involves the validity of a municipal ordinance or franchise, such municipality shall be made a party, and shall be entitled to be heard, and if the statute, ordinance or franchise is alleged to be unconstitutional, the attorney general shall also be served with a copy of the proceeding and be entitled to be heard.

RCW 7.24.110 is a section within Washington's Uniform Declaratory Judgment Act, chapter 7.24 RCW.

Rachel Smith responded to this lawsuit. She did not initiate a declaratory action challenging the constitutionality of a state statute. RCW 7.24.110 applies only to proceedings brought under the declaratory judgment statute. *City of Sumner v. Walsh*, 148 Wn.2d 490, 497, 61 P.3d 1111 (2003); *Watson v. Washington Preferred Life Insurance Co.*, 81 Wn.2d 403, 407, 502 P.2d 1016 (1972). Therefore, Rachel did not need to serve the State attorney general with a copy of any pleading.

*Issue 3: Whether Rachel Smith waived the opportunity to raise the equal protection clause on appeal by failing to assert the argument before the superior court?*

*Answer 3: Since we must address the merits of the equal protection argument as part of our calculus in determining whether to entertain the argument for the first time on*

*appeal, we do not address this issue and instead address the merits.*

June Smith argues that, under RAP 2.5(a), this court should not review Rachel Smith's equal protection challenge because Rachel raises it for the first time on appeal. Rachel contends that the equal protection argument falls within the manifest constitutional error exception to RAP 2.5.

RAP 2.5(a) formalizes a fundamental principle of appellate review. The first sentence of the rule reads:

> **(a) Errors Raised for First Time on Review.** The appellate court may refuse to review any claim of error which was not raised in the trial court.

Good sense lies behind the requirement that arguments be first asserted at trial. The prerequisite affords the trial court an opportunity to rule correctly on an issue before the issue can be presented on appeal. *State v. Strine*, 176 Wn.2d 742, 749, 293 P.3d 1177 (2013). There is great potential for abuse when a party does not raise an issue below because a party so situated could simply lie back, not allowing the trial court to avoid the potential prejudice, gamble on the verdict, and then seek a new trial on appeal. *State v. Weber*, 159 Wn.2d 252, 271-72, 149 P.3d 646 (2006). The rule facilitates appellate review by ensuring that a complete record of the issues will be available and prevents adversarial unfairness by ensuring that the prevailing party is not deprived of victory by claimed errors that he had no opportunity to address. *State v. Strine*, 176 Wn.2d at 749-50.

Countervailing policies support allowing an argument to be raised for the first time on appeal. For this reason, RAP 2.5(a) contains a number of exceptions. RAP 2.5(a)(3) allows an appellant to raise for the first time "manifest error affecting a constitutional right." Constitutional errors are treated specially under RAP 2.5(a) because they often result in serious injustice and may adversely affect public perceptions of the fairness and integrity of judicial proceedings. *State v. Scott*, 110 Wn.2d 682, 686-87, 757 P.2d 492 (1998). However, "permitting *every possible* constitutional error to be raised for the first time on appeal undermines the trial process, generates unnecessary appeals, creates undesirable retrials and is wasteful." *State v. Lynn*, 67 Wn. App. 339, 344, 835 P.2d 251 (1992).

Rachel Smith's equal protection argument implicates a constitutional right. She claims the trial court erred by following the adoption statute, chapter 26.33 RCW, which unconstitutionally terminates parental rights when the parent is not provided the same protections and services as a parent whose rights are terminated under the dependency statutes, chapter 13.34 RCW. This error, assuming it is error, would truly be of constitutional magnitude because it implicates the closely guarded constitutional rights of equal protection and the due process right to parent a child. *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). Therefore, we choose to address the merits of the contention rather than determining the manifest nature of the error.

10

*Issue 4: Whether the mode of terminating parental rights under the adoption statutes is unconstitutional because this mode fails to afford the same protections afforded a parent under the dependency statutes.*

*Answer 4: No.*

Statutes are presumed constitutional, and the challenger of a statute must prove beyond a reasonable doubt that the statute is unconstitutional. *In re Welfare of A.W.*, 182 Wn.2d 689, 701, 344 P.3d 1186 (2015). Whenever possible, it is the duty of this court to construe a statute so as to uphold its constitutionality. *State v. Reyes*, 104 Wn.2d 35, 41, 700 P.2d 1155 (1985).

Washington Constitution article I, section 12, and the Fourteenth Amendment to the United States Constitution guarantee that persons similarly situated with respect to the legitimate purpose of the law must receive like treatment. *State v. Manussier*, 129 Wn.2d 652, 672, 921 P.2d 473 (1996). Washington courts have consistently construed the federal and state equal protection clauses identically and considered claims arising under their scope as one issue. *State v. Manussier*, 129 Wn.2d at 672. Strict scrutiny applies when a classification affects a suspect class or threatens a fundamental right. *State Manussier*, 129 Wn.2d at 672-73. If the state action does not threaten a fundamental or important right, or if the individual is not a member of a suspect or semisuspect class, we apply a rational relationship or rational basis test. *State v. Osman*, 157 Wn.2d 474, 484, 139 P.3d 334 (2006). Parents have a fundamental liberty interest in the care, custody,

11

and control of their children. *Santosky v. Kramer*, 455 U.S. at 753 (1982).

When evaluating an equal protection claim, the court must first determine whether the individual claiming the violation is similarly situated with other persons. *State v. Osman*, 157 Wn.2d at 484 (2006); *State v. Handley*, 115 Wn.2d 275, 289, 796 P.2d 1266 (1990). Stated differently, the court engages in equal protection analysis only if the individual alleging a violation establishes that he or she is similarly situated with other persons in a class. *State v. Haq*, 166 Wn. App. 221, 254-55, 268 P.3d 997 (2012). Thus, the level of review is immaterial if the claimant fails to meet her initial burden of showing different treatment of similarly situated persons.

Equal protection does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the classification is made. *In re Detention of Dydasco*, 135 Wn.2d 943, 951, 959 P.2d 1111 (1998). Whether a defendant is similarly situated is an inquiry that is determined by and relative to the purpose of the challenged law. *State v. Manussier*, 129 Wn.2d at 673-74; *State v. Pedro*, 148 Wn. App. 932, 946, 201 P.3d 398 (2009). We recognize the esoteric and difficult nature of determining whether two individuals are similarly situated. Nevertheless, a Washington decision answers this abstruse question in our context.

Rachel Smith challenges the statutes allowing termination of parental rights during adoption proceedings. Title 26.33 RCW. She claims that she was similarly situated as a parent whose rights would be terminated through dependency proceedings under Title

12

13.34 RCW, but that she was treated differently because she was never offered remedial services.

We begin by reviewing the two statutory methods of terminating parental rights. In dependency proceedings, the trial court may enter an order terminating all parental rights to a child only if it finds that:

> (a)(i) The allegations contained in the petition as provided in RCW 13.34.180(1) are established by clear, cogent, and convincing evidence;
> . . . . [and]
> (b) Such an order is in the best interests of the child.

RCW 13.34.190. Thus, once the State has proven each element from RCW 13.34.180(1), the trial court decides whether termination is in the child's best interests. *In re Dependency of A.M.M.*, 182 Wn. App. 776, 785, 332 P.3d 500 (2014). The State must prove that termination is in the best interests of the child by a preponderance of the evidence. *In re Parental Rights to K.M.M.*, ___ Wn.2d ___, 379 P.3d 75, 83 (2016).

The dependency petition for termination must allege:

> (a) That the child has been found to be a dependent child;
> (b) That the court has entered a dispositional order . . .;
> (c) That the child has been removed . . . from the custody of the parent for a period of at least six months pursuant to a finding of dependency;
> *(d) That the services ordered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided;*
> (e) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future. A parent's

No. 33260-8-III
*In re Adoption of C.W.S., C.L.S., and G.D.S.*

failure to substantially improve parental deficiencies within twelve months following entry of the dispositional order shall give rise to a rebuttable presumption that there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future. The presumption shall not arise unless the petitioner makes a showing that all necessary services reasonably capable of correcting the parental deficiencies within the foreseeable future have been clearly offered or provided. In determining whether the conditions will be remedied the court may consider, but is not limited to, the following factors:

> (i) Use of intoxicating or controlled substances . . .
>
> (ii) Psychological incapacity or mental deficiency . . .
>
> (iii) Failure of the parent to have contact with the child . . .

(f) That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home.

RCW 13.34.180(1).

Rachel Smith focuses on RCW 13.34.180(1)(d) that demands the offering of ordered and necessary services. A service is necessary within the meaning of the statute if it is needed to address a condition that precludes reunification of the parent and child. *In re Welfare of C.S.*, 168 Wn.2d 51, 56 n.3, 225 P.3d 953 (2010); *In re Dependency of A.M.M.*, 182 Wn. App. at 793.

> [T]he State must tailor the services it offers to meet each individual parent's needs. DSHS, however, is not required to offer services when a parent is unable to benefit from the services. Further, even where the State inexcusably fails to offer a service to a willing parent, . . . termination is appropriate if the service would not have remedied the parent's deficiencies in the foreseeable future.

*In re Welfare of S.J.*, 162 Wn. App. 873, 881, 256 P.3d 470 (2011) (citations and internal quotation marks omitted). Parental unfitness is the ultimate inquiry when the State seeks

14

to terminate parental rights under the dependency statutes. *In re Adoption of McGee*, 86

Wn. App. 471, 477, 937 P.2d 622 (1997).

In adoption proceedings, the requisite findings for termination are found in RCW

26.33.120(1).

> [T]he parent-child relationship of a parent may be terminated upon a
> showing by clear, cogent, and convincing evidence that it is in the best
> interest of the child to terminate the relationship and that the parent has
> failed to perform parental duties under circumstances showing a substantial
> lack of regard for his or her parental obligations and is withholding consent
> to adoption contrary to the best interest of the child.

RCW 26.33.120(1). The adoption scheme does not command that the State provide

remedial services before the court terminates parental rights. The State or an adoptive

parent may file a petition for termination, but the State is not a necessary party to a

petition for termination under the adoption statutes. RCW 26.33.100(1).

We now explore whether the differences in the adoption and dependency statutory

processes violate the equal protection clause by treating similarly situated individuals

differently. This court already answered the question in the negative. In *In re Interest of

Infant Child Skinner*, 97 Wn. App. 108, 118, 982 P.2d 670 (1999), we held that the

adoption statute does not violate equal protection by terminating parental rights without

the State offering remedial services like those required in dependency proceedings.

*In re Skinner* involved the termination of a father's parental rights through

adoption proceedings initiated under Title 26.33 RCW. The father challenged his

15

termination by arguing the termination violated due process and equal protection guarantees of the Washington and United States Constitutions. He argued that the act makes no provision for remedial services or the maintenance of family ties and does not provide for relative guardianship petitions or mandate consideration of extended family placements.

The court, in *Infant Child Skinner*, when addressing the father's equal protection argument, held that the nature of the government's function is substantially different in dependency and adoption proceedings, even though they both provide for termination of parental rights.

> The dependency adjudication allows the court to order reunification efforts and remedial services to address the circumstances that prompted intervention by the State. Here, in contrast, the adoption proceeding was commenced by one parent's voluntary decision to relinquish her child. . . . In such situations, the adoption statutes do not provide for State intervention and services. Instead, the act requires an efficient determination of the natural parents' rights and the best interests of the child in order to secure a timely, stable, and permanent placement for the child.

*In re Interest of Infant Child Skinner*, 97 Wn. App. at 117-18 (citations omitted). This court noted that equal protection "does not require that individuals in circumstances that are different in relevant ways be treated as if their situations were the same or that the Legislature may not respond to such differences." *In re Interest of Infant Child Skinner*, 97 Wn. App. at 118.

16

In *Skinner*, this court determined that the disparities in treatment directly flow from fundamental differences between the adoption and dependency actions. Adoption proceedings may not involve the State, do not risk the child entering State care, and seek to secure a timely, stable, and permanent placement for the child. Although both face termination of parental rights, a parent in an adoption proceeding is in a different situation from a parent in a dependency action. Thus, according to the court, equal protection does not demand strict scrutiny of the adoption statute and a rational basis test suffices.

We follow our decision in *Skinner* and hold that a parent whose parental rights are terminated through adoption proceedings is not similarly situated to a parent whose rights are terminated through a dependency action. Rachel Smith argues the *Skinner* court erred by applying the rational basis standard to the adoption statute. We agree that the court applied a rational basis test after recognizing that a parent holds a fundamental interest in the care, custody and companionship of her child. Nevertheless, the *Skinner* court need not have addressed whether or not a rational basis existed. The court had already decided that parents, whose rights are terminated through the adoption process, are not similarly situated from parents, whose rights are terminated through the dependency process.

## CONCLUSION

We affirm the termination of Rachel Smith's parental rights to Casey, Cathy and Gregory.

17

No. 33260-8-III
*In re Adoption of C.W.S., C.L.S., and G.D.S.*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

Fearing, C.J.

I CONCUR:

Pennell, J.

33260-8-III

KORSMO, J. (concurring) — While I agree with the result of the majority that there has been no equal protection violation in this case, I write separately because this outcome is disquieting. It appears that parents have greater rights in their children against the government than they do against stepparents. That standard makes little sense.

As to the mother's arguments here, the majority ably shows that *In re Interest of Infant Child Skinner*, 97 Wn. App. 108, 982 P.2d 670 (1999), establishes that there is no equal protection violation because the mother was not similarly situated to parents in a dependency action. But even if the dependency standards had been applicable, the mother here had far more opportunities to remedy her parental deficiencies than parents in the typical dependency case would have had. The futility of additional services was clearly established.

One of the things troubling me is that the "best interest of the child" standard appears to have different meanings in the two contexts, which leads to the parental interest being eliminated for lesser cause in the stepparent adoption context. In the dependency and termination context, the child's best interest is in being removed from a dysfunctional family setting and acquiring parents who can adequately raise the child in a

No. 33260-8-III
*In re C.W.S., C.L.S., & G.D.S.*

loving home. The parents must step aside so their children can have a better life. In the stepparent context, the best interest appears to be the removal of a parent who is not performing adequately, leaving the other parent and stepparent to do the job. The underperforming parent need not be harming the children or interfering with the other parent's salutary performance of the parenting function, aided by a new partner. The stepparent adoption simply formalizes the stepparent's existing role in the children's lives without any showing that removing the other parent will significantly benefit the children.

I think there is an argument to be made that due process requires a showing that the children would obtain a significant benefit from the removal of the "bad" parent, leading to an improvement in their lives. Otherwise, a parent's significant rights to raise and have contact with her children are not protected to the same degree in a stepparent adoption as they are in a dependency and termination action.

_____
Korsmo, J.

WE CONCUR:

_____
Fearing, C.J.

_____
Pennell, J.

2